FIDELITY & CASUALTY COMPANY OF NEW YORK v. LAWLER and Another.[1]

February 7, 1896.

Nos. 9635—(251).

**Fidelity Insurance—Counter Bond—Sureties.**

> *Held*, in this case, that the counter bond sued upon was a continuing one, and bound the defendants to indemnify plaintiff against loss by reason of its guaranty to the elevator company of the fidelity of L., not only for the original time of one year, but for any renewal or extension thereof.

**Same.**

> The appointment of L. as receiving agent at Kindred was a special one, as to place; but when the defendants were notified of the change of place of the service of L. to Clifford, and consented thereto by their letter expressing their willingness to remain on the bond, they became liable thereon.

**Same—Statute of Frauds.**

> A promise of A. to indemnify C. against loss by becoming responsible for D.'s faithful performance of his duty to E. is not within the statute of frauds.

**Same—Pleading.**

> The case of Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, followed, to the effect that the complaint alleges a default in the condition of the bond.

Action in the district court for Hennepin county against W. L. Lawler as principal and Thomas Lawler and M. Breslauer as sureties upon a bond. From an order, Elliott, J., overruling his demurrer to the complaint, defendant Breslauer appealed. Affirmed.

The bond in suit was as follows:

"Memorandum of agreement, made and entered into this 19th day of August, 1891, between W. L. Lawler, of Minneapolis, Minn., and Thomas Lawler, of Webster, Day county, S. D., and M. Breslauer, of Minneapolis, Minn., parties of the first part, and the Fidelity and Casualty Company of New York of the second part, witnesseth, that in consideration of the company granting a bond of security guarantying certain persons against loss from certain acts or defaults of W. L. Lawler in terms thereof, and of one dollar to them paid, the parties of the first part, for themselves, their and each of their executors and administrators, do hereby jointly and severally undertake and agree to keep harmless and indemnify the company against all loss and dam-

---

[1] Reported in 66 N. W. 143.

age, costs, charges, and expenses, caused, sustained, or incurred, in consequence of any such guaranty, or any renewal or extension of the terms thereof, now or hereafter to be given, and against all consequences of acting under this agreement, and also against all costs, charges, and expenses paid or incurred in or about investigating or resisting any claim made under such guaranty, or any renewal or extension thereof, or in or about prosecuting or defending any suit, action, or other proceeding which may be commenced or prosecuted by or against the said W. L. Lawler, his heirs, executors, or administrators, or against the said company, its successors or assigns, upon said bond, or any renewal or extension thereof, or anywise in relation thereto. And it is hereby agreed, between the said parties hereto, that any indorsement or discharge written on the bond, purporting to be signed by the person entitled to give a discharge thereunder, or under any renewal thereof, or any separate receipts in lieu thereof, or in addition thereto so signed, or a written statement or account and certificate, signed as aforesaid, shall be final and conclusive evidence against the parties of the first part of the fact of the occurrence of loss or damage, and of the amount thereof for which the company is liable, and of any costs and expenses incurred by reason thereof, for which the parties of the first part are responsible to the company, under the conditions hereof (but without excluding the company from the right of establishing otherwise such loss, damages, cost, and expenses), and shall form a valid and binding charge against the said parties of the first part, their and each of their heirs, executors, and administrators, without any further or other proof being given by, or on the part of, the company, in any action, suit, or proceeding against the parties of the first part, their and each of their heirs, executors, or administrators, incurred or occasioned by or through the acts and defaults of the said W. L. Lawler."

The allegations in the complaint in respect to default in the conditions of the bond were substantially as follows: That defendant, W. L. Lawler, within the scope of his authority and as such receiving agent, issued tickets for, and received and took into the elevator of, the Cargill Elevator Company at Clifford, N. D., between August 6, 1892, and August 6, 1894, wheat and dockage thereon amounting to 119,941 bushels and 30 pounds; that said defendant has not delivered to the said Cargill Elevator Company any of said wheat and dockage thereon, except 118,542 bushels and 30 pounds thereof at the termination of his employment, or at any other time, nor has said defendant delivered the 1,399 bushels of said wheat and dockage thereon so received by him as aforesaid to his said employer, or any part thereof, although often requested so to do; that said defendant now refuses, and has at all times re-

64 M.—10

fused, to deliver said 1,399 bushels, or any part thereof, to said Cargill Elevator· Company, and also refuses to account for the same; that said shortage of 1,399 bushels occurred as aforesaid, and appears in the following manner, and not otherwise, to wit, by taking from the total amount of wheat and dockage, 119,941 bushels 30 pounds, received by said defendant as receiving agent for said Cargill Elevator Company at said Clifford, the amount of grain on hand in said elevator at said Clifford, and screenings and dirt from such grain as had been cleaned in said elevator, together with the amount of shipments based upon the weight of said grain and dockage at terminals, to wit, 118,542 bushels and 30 pounds; that said 1,399 bushels of wheat, and dockage thereon, was all of the reasonable worth and value of $699.50; that said shortage was not caused by any of the several exceptions named in said bond; that on or about August 6, 1894, the said Cargill Elevator Company made in due form its certain claim for said shortage of. said defendant W. L. Lawler; that said shortage was covered by and came within the terms and conditions of said bond; that by reason thereof, and under the provisions of said bond, and not otherwise, plaintiff was compelled to pay, and did pay, to the Cargill Elevator Company, as compensation to it for said shortage, the ·sum of $585; that plaintiff now holds the voucher of said Cargill Elevator Company showing the receipt by it of the said $585 in ·full settlement of said shortage.

The provisions of the bond of indemnity which are material in ·connection with the above· allegations of the complaint were as ·follows:

" "That the company shall be liable only for acts of fraud or dis-honesty on the part of the persons mentioned in the schedule, who act .as receiving agents, for shortages in their grain accounts, as follows, viz.: There shall be deducted from the total amount of grain and ·dockage received by the receiving agent at said elevator or elevators the amount of grain on hand, screenings, and dirt from such grain as has been cleaned at said elevator or elevators, together with amount ·of shipments based upon weights of grain and dockage at terminals, .and if the result shows a deficit, and the shortage is not caused by the various exceptions agreed to, this proof of loss will be accepted as ·binding on the part of the company. In case where screening and dirt are burned at the elevator, they shall be weighed before being burned, and the weight reported daily to the employer: provided, however, that the company shall not be liable for the grading of

grain, loss by heating, drying, or leakage of cars, or other damage, shortages caused by defective weighing apparatus or appliances, or for shortages in any elevator or elevators caused by the failure of any of the parties mentioned in said schedule to take dockage enough to make good their weights for grain checks issued, as the employer hereby assumes the risk of its superintendents, traveling men, and officers in giving instructions to its receiving agents as to the amount necessary to take to make good the amount of dockage at terminal points, and the action of receiving agent in taking dockage, the loss by cleaning grain, and the ordinary shrinkage arising from dust in handling of said grain in elevators. And it is further agreed that the company shall not be liable for errors or carelessness in weighing of grain, nor for thefts of grain by persons other than those covered by this bond, nor for robbery or thefts of money from the persons so covered, where proofs of such errors, carelessness, thefts, or robbery are conclusive, as negligence is not covered under this bond."

*A. D. Smith*, for appellant.

*Van Fossen & Frost*, for respondent.

BUCK, J. On or about August 6, 1891, the Cargill Elevator Company, intending to employ one W. L. Lawler as its agent in receiving grain at its elevator and warehouse at Kindred, North Dakota, for one year, beginning on August 5, 1891, the Fidelity & Casualty Company of New York, for a consideration paid to it, gave a bond of indemnity to the Cargill Elevator Company against all acts involving fraud or dishonesty on the part of said Lawler. To indemnify the Fidelity & Casualty Company for its liability incurred by giving such bond, the defendant W. L. Lawler as principal, and the appellant and another person as sureties, on August 19, 1891, executed a counter bond to the Fidelity & Casualty Company, which is set forth in the complaint in full, and which indemnifies the Casualty Company for its liability incurred by giving such bond. There is no limit of time specified, in express terms, as to when the liability of the defendants herein should cease. The premium was paid by the Cargill Elevator Company to the Fidelity & Casualty Company for one year from August 6, 1891. It is further alleged in the complaint that at the end of that year, the defendant W. L. Lawler having requested the Fidelity & Casualty Company to renew its bond of indemnity for Lawler, in his capacity as such receiving agent for the elevator company at Clifford, North Dakota, for a year, commencing August 6, 1892, the Fidelity & Casualty Company notified the defendant sureties of said request, and they

signified their intention, by letter to this plaintiff, to continue on the counter bond to the Fidelity & Casualty Company. The complaint also contains similar allegations as to the subsequent year.

We think the counter bond sued upon is a continuing one, and bound the defendants to indemnify plaintiff against loss by reason of its guaranty to the elevator company of Lawler's fidelity, not merely for the original time of one year, but also for any renewal or extension thereof; and therefore, if Lawler had continued to act in his capacity as receiving agent of the elevator company at Kindred, the defendants would be liable on the same bond for Lawler's default. Davis v. Wells, 104 U. S. 159. We also think that Lawler's appointment as receiving agent at Kindred was a special one, as to place, but the defendants were notified of the change of place of Lawler's service, and consented thereto by their letter expressing their willingness to remain on the bond. The defendants' promise to indemnify the plaintiff against loss by becoming responsible for Lawler's faithful performance of his duty to the elevator company is not within the statute of frauds. Goetz v. Foos, 14 Minn. 196 (265); Browne, St. Frauds, §§ 161, 162. As the defendants consented to continue on the counter bond after Lawler's transfer from Kindred to Clifford, it constituted a waiver of any right they might otherwise have had to claim that they were released by reason of the change in Lawler's place of service. That the complaint alleges a default in the conditions of the bond is conclusively determined in the case of Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, 65 N. W. 351.

The order overruling the demurrer is therefore affirmed.