HARDIN *v.* McGREEVY.

Opinion delivered April 6, 1901.

ESTOPPEL—TAX SALE.—Plaintiff purchased certain lots belonging to defendant at a commissioner's sale for delinquent sewer taxes, and afterwards paid the state and county taxes due thereon. Plaintiff permitted defendant to repay the state and county taxes, without apprising him of his purchase at the sewer tax sale, although the circumstances showed that defendant was ignorant of such sale. *Held* that, by accepting repayment of the state and county taxes without disclosing the previous purchase at the sewer tax sale, plaintiff was estopped from claiming title thereunder.

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

STYLES T. ROWE, Judge.

Hardin purchased certain lots at a chancery sale, and filed a motion to direct the commissioner to execute to him a deed, and that an entry on the margin of the judgment record, showing redemption of the lots, be canceled. McGreevy, as owner of the lots, resisted the motion. From an order denying the motion, Hardin has appealed.

*Mechem & Bryant,* for appellant.

The "time of sale" from which the period allowed for redemption begins to run is the date of the public offer for sale and its acceptance by the purchaser, and not the date of the confirmation of the sale. Black, Int. Laws, 129, 132; 54 Cal. 111; 11 Mich. 199; 2 Ired. Eq. 584; 6 Wall. 759; 16 Tex. 382; 46 Ala. 118; *Cf.* Sand. & H. Dig., §§ 5353, 5341, 5350, 5352, 5380, 5382, 5385, 5386, 5387, 5381; 23 Ark. 39; 32 Ark. 97; 55 Ark. 307; 38 Ark. 78; 47 Ark. 417; 48 Ark. 248; 62 Ark. 213. Appellant was under no duty to speak as to his title under the purchase for improvement tax. 30 Ark. 407; 48 Ark. 411; 11 Am. & Eng. Enc. Law (2d Ed), 435, 436; 60 N. Y. 73; 38 Ill. 456; 105 Ala. 451; 121 Mo. 50; 79 Md. 27; 130 Ind. 579; 145 Ill. 389; 69 Miss. 403; 113 N. Car. 327; Big. Estop. 407, 502, 503; 6 Cush. 210; 44 Ala. 352; 18 Ala. 229; 25 Conn. 250; 40 N. Y. 191; 97 Mo. 263; 4 Johns. Ch. 64. Estoppel from silence cannot arise where there is no duty to speak. 63 Ark. 300; 50 Ark. 128; 39 Ark. 131; 55 Ark. 426; 36 Ark. 114; 46 Ark. 117; 51 Ark. 61; 24 Ark. 255. Appellee having entertained no intention to redeem, appellee did not *cause* or *induce* him to fail to do. Hence no estoppel arose. 11 Ark. 264; 53 Ark. 196; 56 Ark. 380; 11 Am. & Eng. Enc. Law (2d Ed.), 436; 6 Ad. & E. 469; L. R. 8 Q. B. 420; 38 Am. Dec. 620; *S. C.* 3 Hill, 215; 6 Cush. 210; 40 Vt. 51; 55 N. Y. 222, 229; Big. Estop. 549; 97 Mo. 263.

*Hill & Brizzolara,* for appellee.

Appellant is estopped by silence to set up his tax title against appellee. 33 Ark. 465. As to appellant's duty to speak, see 63 Ark. 300.

BUNN, C. J. The Board of Improvement of Sewer District No. 1, of Fort Smith, brought suit against Nathaniel Carter and others under section 5341 of Sandels and Hill's Digest, and obtained judgment of condemnation and order of sale of certain property in said sewer district for the nonpayment of the assess-

ment thereon. Among the property so condemned and ordered sold were lots 7, 8, 9, 10, 11, in block 612, Reserve addition to the city of Fort Smith, owned by the appellee, Edward McGreevy, a non-resident, whose agent at Fort Smith for the payment of his taxes was one E. C. Brogan. The notice to McGreevy, as a non-resident party to the suit and judgment and order of sale, were all legally and properly had. The sale was advertised and made on February 3, 1898, and at the sale the appellant was purchaser of the above lots, and obtained certificate therefor. On April 17, 1899, he filed his motion in the above cause of *Board of Improvement* v. *Nathaniel Carter et al.,* with his certificate, praying the court to direct the commissioner to make a deed to said lots, and that an entry appearing on the margin of the record of judgment, showing a redemption of said lots on April 3, 1899, be canceled and held for naught. To this motion Edward McGreevy appeared by attorneys, and filed answer alleging redemption of the lots *within one year from the confirmation of the sale,* and also that the lots were not properly advertised for sale, and that the purchaser (appellant) was estopped from asserting his right to a deed.

The motion and response were heard on two agreed statements of facts, which constituted all the evidence in the case.

The first is as follows, viz: "That said Edward McGreevy was owner of said lots, which were located in plaintiff's (Board of Improvement's) district; that an assessment for the benefit of the improvement was made on said lots, in common with other lots within said district, which assessment was not paid, and in August, 1897, said board brought above-entitled cause to condemn said lots, together with other property, to be sold to pay the assessment; that on October 19, 1897, upon due notice had to the owner of the above-mentioned lots, Edward McGreevy, judgment was rendered condemning the same to be sold to pay said assessment, penalty and costs, amounting to the sum of $7.46; that said judgment was regular, and in all things in accordance with the law in such cases made and provided; that on April 3, 1899, E. C. Brogan, the duly-authorized agent of Edward McGreevy for that purpose, by tender legally and properly made according to law, offered and tendered to A. E. Hardin the amount paid by him for the lots, together with 20 per centum thereon, which said Hardin refused to receive, whereupon said Brogan on April 3, 1899, paid said amount and 20 per centum to the clerk of the court, who made the following entry on the margin of the decree aforesaid, to-wit:

"April 3, 1899. Redeemed. Redemption money deposited with the clerk. (Signed) D. P. Durden, Clerk, by H. A. Durden, D. C."

The case is thus summed up in appellee's brief: "On March 26, 1898, Hardin paid state and county taxes on said lots for the year 1897. On April 9, 1898, Brogan, as agent of McGreevy, offered and tendered said Hardin the amount of said state and county taxes, which Hardin accepted, and the receipt which had been issued to Hardin was taken up, and a new receipt, dated April 9, 1898, issued. At the time of this payment of state and county taxes by Hardin, neither of the parties mentioned the sewer tax, nor the fact that said lots had been condemned and sold for said sewer taxes and bought in by Hardin, and Brogan did not then know that said lots had been sold for sewer taxes, when as a matter of fact Hardin was then holding the certificate for the same.

"On March 3, 1899, Hardin again paid the state and county taxes for the year 1898 upon the property, and on April 3, 1899, Brogan offered to pay said taxes, and was informed again that they had been paid by Hardin, and at once went to see Hardin, and offered to pay the same, which Hardin refused [to accept], and [Brogan] then learned for the first time that Hardin had bought the lots at sewer sale, and he immediately, to-wit, on the 3d April, 1899, offered to redeem said land from the sewer tax sale, and made tender of the amount due thereon, with penalties, also state and county taxes, to Hardin, which was refused, and then made said payment to the clerk, and caused said payment to be entered of record as stated."

When Brogan, on the 9th April, 1898, tendered and paid Hardin the taxes, state and county, which the latter had paid on the 26th of March, 1898, for the year 1897, if Hardin intended to claim title under his previous purchase at sewer tax sale, he should not have accepted the money from Brogan. To accept the state and county taxes from him, and yet not disclose his real claim, was, of course, misleading to Brogan, who was ignorant of the sewer-tax sale, and this itself was a circumstance going to show to Hardin the ignorance of Brogan on the subject; for no prudent man would seek to redeem land from one burden, while a still more fatal one to his interest was suffered to remain. Hardin's withholding this information from Brogan could have had but one object, and that to hold the secret lien until the time for redemption should expire, and his lien should ripen into a title. This

theory is the more apparently correct when he refused the very same tender on April 3, 1899, when he thought the time for redemption from the sewer tax sale had expired. The chancellor, in effect, found that Hardin knew of the ignorance of Brogan as to his purchase, and that Hardin acted upon that theory in the transaction, and held that he was thus estopped from claiming title under his purchase. We see no cause to disturb his findings.

Affirmed.