## UNITED STATES FIDELITY & GUARANTY CO. v. WILSON.

No. 8676.

Circuit Court of Appeals, Eighth Circuit.

May 7, 1930.

320

A. W. Dobyns, of Little Rock, Ark. (G. B. Rose, D. H. Cantrell, J. F. Loughborough, and A. F. House, all of Little Rock, Ark., and William M. Hall, of Memphis, Tenn., on the brief), for appellant.

Lamar Williamson, of Monticello, Ark., for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

February 25, 1924, the firm of Fischer Freres, of Antwerp, Belgium, desired to intervene in a certain receivership suit then pending in the District Court of the United States at Clarksdale, Miss. On that day appellee, as attorney for that firm, went with one of its members to Mills & Sons, local agents for appellant at Pine Bluff, Ark., where appellee resides, to get a cost bond to be filed in that intervention. There Fischer Freres, by W. Fischer, made application in writing for an open penalty cost bond, carrying a premium of $10. In this application the space after the word "penalty" was left blank. Fischer Freres, being alien nonresidents, were unable to qualify for indemnity to appellant. Therefore appellee on the same day executed with them the following special indemnity agreement annexed to the application:

"The undersigned, hereby agrees to Indemnify and keep the United States Fidelity and Guaranty Company indemnified and hold and save it harmless from and against any and all demands, liabilities, charges and expenses of whatsoever kind or nature, which it may at any time sustain or incur by reason of or in consequence of having executed the above described bond, and we do further guarantee that the charges for executing and continuing upon the bond will be paid as agreed until the Company has been released from liability thereunder."

The federal court at Clarksdale declined to accept an open penalty bond, but required one with a fixed penalty of $10,000, conditioned to cover the payment of all court costs and expenses growing out of the propounding of the claim of Fischer Freres, which might be finally adjudged to be paid, and all costs that might accrue to the receivers. It is conceded that an open penalty bond is one without any fixed penalty. The premium for such a bond is only $10 per annum, it being generally estimated that the costs in a suit do not usually run beyond $1,000. However, the bond being open and unlimited, would cover any amount ultimately assessed. The premium for a bond with a fixed penalty of $10,000 is $100 per annum. Agent Mills sent the application, with attached indemnity agreement, to Mr. Harwell, general manager of appellant at Memphis, Tenn. He also wrote the agents of the company at Clarksdale, Miss., authorizing them, on the faith of the application taken by him, to sign and deliver to appellant a cost bond to be filed in the United States court there. The letter opened with these memoranda:

"Re: Application for Cost Bond Fischer-Frers, of Antwerp, Belgium in U. S. District Court at Clarksdale, Miss. Open penalty 2-25-24. Prem. $10.00."

Mills also gave to Wilson a special letter of introduction to the agents at Clarksdale.

There is some testimony to the effect that originally there was executed an open penalty bond in conformity with the application; that, being unacceptable, it was returned to Mr. Mills, was canceled, and delivered to appellee. There is also some confusion in the testimony as to whether more than one $10,-000 bond was drawn and tendered. The important fact, however, is that when the bond carrying a penalty of $10,000 was tendered for execution to agent Mitchell at Clarksdale, he thought the amount was excessive, and that the situation called for caution in view of the letter from Mills authorizing the execution of an open penalty bond. He says:

"A. So I went on to the office and thinking that Mr. Mills had not gone into the matter carefully and did not realize the possibility of the costs in this case would run as high as I was advised it would and I called Mr. Harwell over the telephone and told him about it and he replied to us, that it was all right that Mr. Wilson stood well financially, he being an attorney and to make any bond he was having to file in the case, that we had his special indemnity and were relying on that."

Accordingly a cost bond carrying a penalty of $10,000 was executed by appellant as surety and was duly approved and filed. On final hearing the federal court in Mississippi disallowed the intervention of Fischer Freres and taxed costs against them in the sum of $28,000. Judgment was rendered against appellant, as surety, for $10,000, which it paid. Upon appellee's refusal to indemnify appellant this suit was brought. The trial court directed a verdict in favor of appellee.

The complaint, after reciting the application of Fischer Freres to Mills & Sons, appellant's agents at Pine Bluff, Ark., for a cost bond, and the execution of the indemnity agreement by appellee, all as above set out, proceeds as follows:

"The said Mills & Sons then wrote Martin & Mitchell, the agents of the plaintiff in Clarksdale of the application for an open penalty bond and directed them to sign the bond when it was presented to them by the defendant. When the defendant arrived at Clarksdale he discovered that an open penalty bond would not be approved and that it would be necessary for him to file a bond in a fixed penalty of $10,000. He thereupon presented to the said Clarksdale agents of plaintiff a bond with a fixed penalty of $10,000. The said agents at first refused to execute such a bond because they had been directed to sign an open penalty bond, but upon the insistence of the defendant, and after securing authority from H. F. Harwell, and the District Manager of the plaintiff at Memphis, they executed it and it was then filed in court by the defendant."

To these allegations of the complaint appellee made the following answer:

"Admits that Mills & Sons wrote Martin & Mitchell, the agents of the plaintiff in Clarksdale of the application for an open penalty bond and directed them to sign the open penalty bond when it was presented to them by the defendant's client. Admits when the defendant arrived at Clarksdale he discovered that an open penalty bond was requested by plaintiff, but denies that he discovered that it would be necessary for him to file a bond in a fixed penalty of $10,000.00. Denies that he thereupon presented to the said Clarksdale agents of plaintiff a bond with a fixed penalty of $10,000.00. Denies that said agents at first refused to execute such a bond because they had been directed to sign an open penalty bond and denies that upon the insistence of the defendant, and after securing authority from H. F. Harwell, the District Manager of the plaintiff, at Memphis, they executed it and denies that it was then filed in court by the defendant."

Upon the issues thus framed appellant contends that the indemnity agreement signed and delivered by appellee covered the cost bond ultimately tendered, executed, and filed, and that appellee is estopped from denying his liability thereunder. The defenses interposed may practically be condensed and considered under the following heads:

1. That appellee was released by the unauthorized and material alteration of the application of Fischer Freres for the bond involved.

2. That the bond executed was not the bond authorized by the original application, and that appellee's guaranty of indemnity was confined to that application.

3. That liability against appellee, based upon an alleged oral agreement at Clarksdale, Miss., is not permissible under the pleadings.

4. That, if permitted, this claim of appellant would fall before the bar of the Statute of Frauds.

We shall discuss these in their order.

■ 1. The alteration challenged is the insertion in the application, at the office of the general manager of appellant at Memphis, of the figures "$10,000.00" in the blank after the word "penalty." When the application

and the indemnity agreement were executed that blank was left unfilled. Under the circumstances of this case we do not deem this so-called alteration fatal to the validity of the instrument involved. In the complaint the penalty inserted is not counted upon as a part of the original instrument, nor as creating a liability as such part. The insertion of these figures is explained in the testimony as a notation made for the benefit of the home office at Baltimore, Md., in computing the amount of reserve it would be obliged to carry because of this liability. At the trial counsel for appellant said, in response to a question by the court: "It is just for their records in the office, and doesn't show liability." It conclusively appears that the insertion was, in effect, a mere memorandum for the home office, and in no sense an effort to alter the terms of the original instrument.

2. It is true that the bond ultimately demanded, tendered, accepted, and filed was not an open penalty bond, contemplated by the terms of the written application as executed in the office of Mills & Sons. The change came about, as disclosed by the record, in the following manner: Upon reaching Clarksdale, Mr. Wilson found that an open penalty bond would not be accepted; that one with a fixed penalty of $10,000 was demanded. Such a bond was prepared and, as Mr. Sivley, opposing counsel in the intervention suit testifies, "was presented by Mr. Wilson on behalf of Fischer Freres over my protest." It appears that there was some difference between counsel, not as to the amount, but with respect to some of the conditions. This bond, thus presented by appellee, was ultimately approved. Mr. Mitchell, appellant's agent at Clarksdale, who executed on behalf of appellant this bond tendered by Wilson, and at his request, testifies thus:

"Q. Did you or did you not tell Mr. Wilson that you would sign the bond for the company on the faith of his indemnity agreement? A. Yes, I impressed that on him once or twice. When he found out they were going to reduce it, reduce it to as small amount as possible and that looked excessive to him, and I simply told him the company was willing to sign any bond he saw fit to file in this particular case, relying on his indemnity."

The reduction referred to is evidently the conversion of an open penalty bond, carrying a liability for the total costs assessed, to one limiting the liability to $10,000. The costs finally taxed against Fisher Freres aggregated $28,000. Concerning the filing of the $10,000 cost bond, Mitchell testified as follows:

"A. That bond was left with the clerk of the court on February 28th, to be forwarded to Judge Holmes for his approval and I heard nothing more from it.

"Q. Did you go down to the court with Mr. Wilson and Mr. Fischer? A. Yes, sir.

"Q. And who was deputy clerk at that time? A. John H. Cossar.

"Q. And the bond was filed with him? A. It was.

"Q. No other application or indemnity agreement was taken in your office? A. No, sir."

Mr. Cossar, the deputy clerk, testifies thus as to the filing:

"Q. Do you remember the bond that was filed by Fischer Freres as interveners in that case? A. I do.

"Q. Do you remember who brought that bond to your office? A. Joe Mitchell and Mr. Wilson and Mr. Fischer. They all came there together.

"Q. What Mr. Wilson? A. He was attorney for Fischer Freres. He did the talking.

"Q. When he came with the bond what did he say? A. Well, they wanted to file the bond in this case, and the attorneys on the other side had stipulated certain things that should be embodied in this bond, and I could not approve the bond—I had orders not to approve that bond unless the Judge approved it, and I told him that I could not approve the bond, it would have to be taken up with the Judge, and just as soon as I could do that I did.

"Q. Do you remember the date that they came to your office? A. They came in on February 28th.

"Q. Then what did you do with the bond? A. I took the matter up with Judge Holmes and sent him the bond for approval. The Judge approved the bond on March 6th and mailed it to me, and I filed the bond on the 7th day of March.

"Q. Was that the bond Mr. Wilson brought in to you and had talked to you about? A. Yes, sir, that was the bond brought in there."

He says further that he notified Mr. Wilson by telegram when the bond was filed. The only testimony in the record in any respect running counter to the foregoing is that of A. W. Mills, local agent of appellant

at Pine Bluff, Ark., who testifies that Wilson was in Pine Bluff on February 28th, and further that at all times to him appellee objected to a $10,000 bond, and said he was not going to agree to it, nor to become responsible for it. This testimony of Mills, as to the statements of Wilson in Pine Bluff, were incompetent to establish his attitude toward the matter when the bond was executed and delivered by him for filing at Clarksdale, Miss., and should properly have been excluded if challenged by seasonable objection, followed by exception, or at least by motion to strike out the matter improvidently admitted. However, the most that can be claimed for the Mills testimony is that it created an issue of fact for the jury as to whether, from the act of appellant, there resulted a modification of the original application to which he assented, and upon which he became liable as indemnitor.

In Title Guaranty & Surety Co. v. Hannon et al. (C. C. A. 8) 265 F. 116, 118, the facts were that one Kelly had made application to the plaintiff surety company, on a form presented by it, to furnish his bond for $1,000,000 as state treasurer. By this application he agreed to pay a stated premium and to indemnify the plaintiff against loss as such surety. Without further application plaintiff furnished a bond for $500,000, which Kelly accepted and on which he paid the premium charged. This court held that "plaintiff's action was a counter proposal, based on the original application, and that on its acceptance such application and its conditions and obligations came into force." In the body of the opinion, Judge Lewis, speaking for the court, said:

"Kelly's defense—the only one with a semblance of merit—was that the refusal of the plaintiff to become his surety for one million dollars was a rejection of his written application, that his acceptance of the half-million dollar bond was an entirely new transaction wholly independent of his written application, and that he was not bound on the indemnity clause in it. * * * The circumstances under which the bond was delivered to and accepted by Kelly cause us to believe that the only rational estimate to be taken of that transaction is that the tender of that bond to Kelly was a proposed modification by the plaintiff of the application in that respect, and that Kelly's silent acceptance of it was an assent on his part to the modification."

It is argued by counsel for appellee that this decision might be persuasive in a suit against Fischer Freres, the principal in the bond, but is not in point against Wilson, "who was merely an accommodation indemnitor for a different contract." We think, as held by this court in United States Fidelity & Guaranty Co. v. Board of Commissioners, 145 F. 144, that the actual intent and meaning of the parties when the agreement was made is to be "deduced from the entire contract, from its subject matter, from the purpose of its execution, and from the situation and circumstances of the parties when they made it." Here it was urgent that a cost bond must be filed by the Fishers if their intervention was to be heard. It had been necessary for Wilson to sign as indemnitor upon the application for that bond. Arriving at Clarksdale he found that a penalty of $10,000 was demanded. As attorney, deeply interested in the litigation, he prepared and tendered a bond carrying that penalty. Acting for his client, he "did all the talking." He insisted that the modified bond be accepted and approved. It was left with the clerk to be submitted to the judge for approval. Appellee was repeatedly told that appellant was executing the bond in reliance upon his special indemnity agreement. So far as this record shows, these statements were received without protest or objection. Subsequently, as attorney for Fischer Freres, he executed the following document:

"In Re Bond for Costs.

"By Intervener.

"In consideration of the United States Fidelity and Guaranty Company's having executed as surety my bond in case in U. S. District Court, at Clarksdale, Miss., v. F. M. Kelly and W. E. Stone Reers Lamb-Fish Lbr. Co., dated on or about the 28th day of February, 1924, in the penalty of Ten Thousand Dollars ($10,000.00), I do hereby agree to pay the premium thereon, to-wit: One hundred dollars ($100.00) in advance for the first year, and One hundred dollars ($100.00) in advance for each year the bond shall be in force thereafter and until I have furnished said Company with evidence satisfactory to it of its release from all liability thereunder.

"This Agreement is to be considered a part of my application to said Company to become surety for me in said matter and may be attached to said application.

"Witness my hand and seal this 12th day of March, 1924.

"R. W. Wilson [Seal]
"Attorney for Fischer Freres."

 This was an amendment to the application to the extent at least of the provision for the premium to be charged. It was procured by agent Mills at the request of general agent Harwell. Mr. Mills says that Wilson had objected for some time to signing this instrument, and that it was finally accepted from him as attorney for Fischer Freres. It is to be noted, however, that it is a complete recognition and acceptance of the bond that was filed. It recites that it is to be considered as a part of the application to the company in said matter, and may be attached thereto. The verdict was directed at the close of plaintiff's case, and the testimony must be construed most strongly in appellant's favor. From the record before us we think a case was made for the jury upon the question of whether appellee accepted the bond filed as furnished under the application made, and consented that his special indemnity agreement should apply thereto.

 3. This defense is founded upon the theory that plaintiff must recover, if at all, upon a new oral agreement made in Clarksdale, Miss., on February 28, 1924, and that this basis of recovery is not permissible under the pleadings. Appellant sued upon the special indemnity agreement attached to the application of Fischer Freres for a cost bond, and its contention is that, by the acts of appellee at Clarksdale, the bond executed and filed was based upon the original application and brought its conditions and obligations into force; that appellee acquiesced in this view and consented to the execution of the $10,000 bond upon the condition and with the mutual understanding that his special indemnity agreement, attached to the application, applied to and covered that bond. It insists that, under the circumstances, appellee is estopped to deny his liability. The question presented is rather one of estoppel than of liability under a new oral agreement. Here, again, the sufficiency of the pleadings to support this claim is questioned. The general rule is, in states where code pleading prevails, that it is necessary to plead estoppel in pais specially, provided there is opportunity to do so. 21 C. J. par. 248, p. 1242. Arkansas is such a state, and the rule is generally recognized in the national courts. Bigelow on Estoppel (6th Ed.) p. 761; Michie's Encyc. U. S. Reports, vol. 5, p. 1002; Feick v. Stephens (C. C. A. 6) 250 F. 185; Mabury v. Louisville & J. Ferry Co. (C. C. A. 7) 60 F. 645; In re Stoddard Bros. Lumber Co. (D. C.) 169 F. 190; Johnson v. Garner (D. C.) 233 F. 756. But to this general rule there are well-defined exceptions. In Shelton v. Southern Ry. Co., 255 F. 182, the late Mr. Justice Sanford, when a district judge, held that generally speaking an estoppel in pais need not be pleaded, estoppel being in effect a rule of evidence. This consideration has led to the very general view that "an estoppel arises as a conclusion of law from the facts pleaded, rather than from the mere designation of the act as an estoppel." Carter v. Rinker (C. C.) 174 F. 882, 886; Joy v. Godchaux (C. C. A. 8) 35 F.(2d) 649, 652; City of Ironton v. Harrison Construction Co. (C. C. A. 6) 212 F. 353; Letta v. Cincinnati Iron & Steel Co. (C. C. A. 6) 285 F. 707.

See, also, Standard Sanitary Mfg. Co. v. Arrott (C. C. A. 3) 135 F. 750; Grand Valley Water Users' Ass'n v. Zumbrunn (C. C. A. 8) 272 F. 943.

In our judgment the facts pleaded, greatly reinforced by the evidence adduced, laid a sufficient foundation for the consideration of this issue. But there is another reason why appellant is not foreclosed by the pleadings. It is generally held that "if a party have not opportunity to show the estoppel by pleading, he may exhibit the matter thereof in evidence on the trial." Shelton v. Southern Ry. Co., supra, 255 F. 182, loc. cit. page 186, and cases cited. As heretofore stated, appellant declared on the special indemnity agreement. It was not called upon to plead estoppel in its complaint. Appellee, in his answer, set up a departure from the original application to which that agreement applied, and alleged that the bond given was not covered thereby. Here, then, was the first occasion upon which a plea of estoppel was indicated. Necessarily it must have been interposed, if at all, by a reply. But the statutes of Arkansas (Kirby's Dig. § 6108) provides that "there shall be no reply, except upon the allegation of a counterclaim or set-off in the answer." In the absence of such allegation no reply is admissible. St. Louis, Iron Mountain & Southern Ry. v. Higgins, 44 Ark. 293; A. L. Clark Lumber Co. v. Johns, 98 Ark. 211, 135 S. W. 892. In such case the answer "is deemed controverted in legal contemplation as though by a direct denial of the allegation or an avoidance of its effect." Sun Oil Company v. Hedge, 173 Ark. 729, 738, 293 S. W. 9, 13. In any event, we think that, if the filing of a reply setting up in terms the estoppel claimed was not absolutely prohibited, the failure to file was at least excused by the

rules of pleading which prevail in the state where the action was brought, and by the issue clearly defined by the facts pleaded in complaint and answer; and that the situation does not differ in principle from one in which opportunity to plead estoppel is not afforded.

4. But it is urged that, if it be held that the arrangement made at Clarksdale, Miss., amounted to a new oral agreement of some nature this action would necessarily be barred by the Statute of Frauds.

Section 4862, Crawford & Moses' Digest of the Statutes of Arkansas, provide that no action can be maintained to charge any person upon any oral promise or agreement to answer for the debt, default, or miscarriage of another. This agreement of appellee was one of indemnity and not of suretyship. At the time it was made there was no debt or obligation in the nature of a cost bond in existence. The indemnity agreement of Wilson was demanded as a condition precedent and inducement to the making of such a bond. It is generally held that such is a direct and not a collateral promise, and therefore not within the Statute of Frauds. Meinrath Brokerage Co. v. Collins-Dietz-Morris Co. (C. C. A. 8) 298 F. 377; Hawes v. Murphy, 191 Mass. 469, 78 N. E. 109; Esch v. White, 76 Minn. 220, 78 N. W. 1114; Fidelity & Casualty Co. v. Lawler et al., 64 Minn. 144, 66 N. W. 143; Warren v. Abbett, 65 N. J. Law, 99, 46 A. 575.

"A promise by one person to indemnify another for becoming surety upon the bond of a third is not within the statute of frauds, and will support an action, although not in writing." Hartley v. Sandford, 66 N. J. Law, 40, 48 A. 1009.

In Chapin v. Merrill, 4 Wend. 657, the Supreme Court of New York reached the same conclusion, "the reason being that it is an original undertaking, and not in any sense a promise to answer for the debt, default, or miscarriage of another."

The Supreme Court of the United States holds that, in any event, if the promissor "has a personal, immediate and pecuniary interest in a transaction in which a third party is the original obligor, the courts will give effect to the promise. The real character of a promise does not depend altogether upon form of expression, but largely upon the situation of the parties, and upon whether they understood it to be collateral or direct promise." That appellee, as counsel for Fischer Freres, had a personal, immediate, and pe-

cuniary interest in the transaction is apparent. Unless the bond were filed there could be no intervention. Upon the filing of that intervention depended the retainer and fee of Wilson as attorney in the premises. He was substantially interested and was the moving party in all that was done. Whatever view may be taken of the proceeding at Clarksdale, whether as an acceptance of the $10,000 bond under the original application and special indemnity agreement, or as a new oral promise of indemnity, this action is not barred by the Statutes of Frauds.

We have carefully considered all points raised by counsel that are deemed material to the disposition of this appeal. For the error committed in failing to submit the issues to the jury, the judgment below is reversed, and the case remanded for a new trial in accordance with the views expressed in this opinion.

STONE, Circuit Judge.

I agree that this case should be remanded for a new trial but think this should be done upon the sole ground of estoppel. Under the statutes of Arkansas, a reply is permissible only where the answer contains a set-off or counterclaim (Kirby & Castle's Digest (1916) § 7550), and evidence in support of a denial of or of an avoidance of other matters contained in the answer may be introduced without a reply (Anglin v. Marr Canning Co., 152 Ark. 1, 10, 237 S. W. 440; Lay v. Gaines, 130 Ark. 167, 171, 196 N. W. 919; Clark Lumber Co. v. Johns, 98 Ark. 211, 135 S. W. 892; Watson v. Johnson, 33 Ark. 737; Tucker v. West, 29 Ark. 386, 406). I think the petition failed to plead facts which could be the basis of an estoppel, but such could have been made an issue by a reply had the state statutes permitted such. As no counterclaim or set-off was pleaded in this answer, no reply could (under the statute) have been filed but, under the above decisions, evidence of an estoppel would be competent. Such evidence appears in the testimony of the witness Mitchell. See Stewart Oil Co. v. Bryant, 153 Ark. 432, 441, 243 S. W. 811; Brownfield v. Bookout, 147 Ark. 555, 561, 228 S. W. 51; W. & O. V. R. R. Co. v. Garrison, 74 Ark. 136, 138, 85 S. W. 81; Hardin v. McGreevy, 69 Ark. 211, 63 S. W. 51, which announce the doctrine, generally accepted, that estoppel may be based upon silence or acquiescence where there is a duty to speak.

Defendant's contention that to permit such an issue would violate the Statute of

Frauds is directly answered by Conley v. Johnson, 69 Ark. 513, 64 S. W. 277, 86 Am. St. Rep. 209.