## UNITED STATES FIDELITY & GUARANTY CO. v. WILSON.

### No. 9151.

Circuit Court of Appeals, Eighth Circuit.
Aug. 17, 1931.

A. W. Dobyns, of Little Rock, Ark. (G. B. Rose, D. H. Cantrell, J. F. Loughborough,

and A. F. House, all of Little Rock, Ark., on the brief), for appellant.

R. W. Wilson, of Monticello, Ark. (Sam T. Poe, of Little Rock, Ark., and Lamar Williamson, of Monticello, Ark., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

GARDNER, Circuit Judge.

The appellant, as plaintiff below, brought action against the defendant to recover $10,000 on a contract of indemnity. The case was before this court on a prior appeal from a judgment in favor of the defendant upon a directed verdict. 41 F.(2d) 319. The parties will be referred to as they appeared in the lower court. On the first trial, defendant introduced no testimony, but on the second trial, he introduced evidence in defense of the action, and the record now before us is materially different from that on the former appeal.

On February 25, 1924, the firm of Fischer-Freres, of Antwerp, Belgium, clients of the defendant, desired to intervene in a receivership suit then pending in the District Court of the United States for the District of Mississippi. On that date, defendant, who is a practicing lawyer, with a representative of his client, applied to Messrs. Mills & Sons, local agents for plaintiff at Pine Bluff, Ark., where defendant was residing, for a cost bond to be filed in the contemplated intervention. Written application was submitted for an open penalty cost bond, carrying a premium of $10, and in the application the space following the word "penalty" was left vacant. Fischer-Freres, being nonresident aliens, were unable to qualify for indemnity to appellant, and, therefore, the defendant signed the following indemnity agreement attached to the application: "The undersigned hereby agrees to indemnify and keep the United States Fidelity & Guaranty Company indemnified and hold and save it harmless from and against any and all demands, liabilities, charges and expenses of whatsoever kind or nature, which it may at any time sustain or incur by reason of or in consequence of having executed the above described bond, and we do further guarantee that the charges for executing and continuing upon the bond will be paid as agreed until the company has been released from liability thereunder."

This was signed not only by defendant, but by Fischer-Freres, through its representative W. Fischer. Plaintiff's agent, Mills, sent the application with the attached indemnity agreement to a Mr. Harwell, its general agent at Memphis, Tenn., and at the same time wrote the agents of the plaintiff at Clarksdale, Miss., where the receivership suit was pending, authorizing them, on the faith of the application taken by him, to sign and deliver to defendant a cost bond to be filed in the receivership suit. The letter transmitting the application bore the following caption: "Re: Application for Cost Bond Fischer-Frers, of Antwerp, Belgium in U. S. District Court at Clarksdale, Miss. Open penalty 2–25–24 Premium $10.00."

Agent Mills also gave to the defendant Wilson a special letter of introduction to plaintiff's agents at Clarksdale, Miss. The court at Clarksdale, however, declined to accept an open penalty bond, but required one with a fixed penalty of $10,000, conditioned to cover the payment of all court costs and expenses growing out of the propounding of the claim of Fischer-Freres, which might be finally adjudged to be paid, and all costs that might accrue to the receivers. It is conceded that an open penalty bond is one without any fixed penalty.

Defendant went to Clarksdale, Miss., arriving there on February 27, 1924, and the evidence is in serious conflict as to what occurred there. In any event, the plaintiff executed a $10,000 bond, instead of an open penalty bond, and this was filed in the receivership suit. No other written application was presented to the plaintiff or its agents, than the one adverted to, but after the $10,000 bond had been executed, and on March 12, 1924, on request of the local representative of the plaintiff company at Pine Bluff, Ark., a new premium agreement in the following words was signed:

"In Re: Bond for Costs. (Memphis No. S–11127)

"By Intervener.

"In consideration of the United States Fidelity and Guaranty Company's having executed as surety my bond in case of U. S. District Court, at Clarksdale, Miss., v. F. M. Kelly and W. E. Stone, Receivers, Lamb-Fish Lumber Co., dated on or about the 28th day of February, 1924, in the penalty of Ten Thousand and No/100 Dollars ($10,000.00) I do hereby agree to pay the premium thereon, to-wit: One Hundred and No/100 dollars ($100.00) in advance for the first year, and One Hundred and No/100 Dollars ($100.00) in advance for each year the bond shall be in

force thereafter and until I have furnished said Company with evidence satisfactory to it of its release from all liability thereunder.

"This Agreement is to be considered a part of my application to said Company to become surety for me in said matter and may be attached to said application.

"Witness my hand and seal this 12th day of March, 1924.

"[Seal.]     [Signed]   R. W. Wilson,
     "Attorney for Fischer Freres.
"Witness: [Signed]   A. W. Mills."

The lower court denied plaintiff's motion for an instructed verdict in its favor, and on this appeal it is urged that the court erred in so doing, and that it also erred in refusing two instructions requested by plaintiff.

The court in effect instructed the jury: (1) That the plaintiff might recover if it showed that at Clarksdale, Miss., when the $10,000 bond was executed, defendant had agreed with Mitchell, the agent of the plaintiff, that the indemnity agreement which he had executed at Pine Bluff would cover the bond that was actually executed; (2) that the plaintiff might recover if it proved that defendant at the time the bond was executed at Clarksdale, Miss., orally agreed with Mitchell that he would become liable or protect against loss on the bond; (3) that even if the jury found neither of these propositions had been proved, but should find that at the time the bond was executed, Mitchell executed it in the belief that the indemnity agreement which defendant had executed at Pine Bluff, Ark., would cover the bond he was then executing, and that Wilson knew that he was executing the bond in that belief, plaintiff might still recover; (4) but if, on the other hand, the jury were not convinced by a preponderance of the evidence of the truth of either of these propositions, then they should find for the defendant.

■ As the jury returned a verdict for defendant, we must assume that it believed the evidence produced by him, and we must also assume that the evidence proves all that it reasonably may be found sufficient to establish. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Texas & Pac. R. Co. v. Cox, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; Gardner v. Michigan Central R. Co., 150 U. S. 349, 14 S. Ct. 140, 37 L. Ed. 1107; Baltimore & Ohio R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419. If, when so considered, reasonable men may have reached different conclusions, then the court was bound to send the case to the jury. Gun-

ning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Mutual Life Ins. Co. v. Hatten (C. C. A.) 17 F.(2d) 889; United States Can Co. v. Ryan (C. C. A.) 39 F.(2d) 445; Crookston Lumber Co. v. Boutin (C. C. A.) 149 F. 680; Wharton v. Aetna Life Ins. Co. (C. C. A.) 48 F.(2d) 37; Illinois Power & Light Corp. v. Hurley (C. C. A.) 49 F.(2d) 681.

■ Testimony for plaintiff was to the effect that upon arrival at Clarksdale, defendant prepared a $10,000 fixed penalty cost bond, and presented it to plaintiff's agent at Clarksdale; that the agent, because of the difference in the character of the bonds, telephoned his superior at Memphis before executing the bond, receiving instructions to execute it on the faith of the indemnity agreement, all of which information was communicated to the defendant before the bond was executed. This, however, defendant as a witness in his own behalf positively denied. He testified that he, with his client, was in Clarksdale on February 27, 1924; that he had with him a letter to plaintiff's agent at Clarksdale; that before leaving Pine Bluff, Ark., he had learned that a $10,000 bond was being insisted upon; that he went to the clerk's office on the evening of February 27, but found it closed; that he then learned from the special master that the hearing in the receivership case had been postponed until March or April; that his trip to Clarksdale was to attend that hearing; that he left Clarksdale the night of February 27, returning to Little Rock, Ark., on February 28, and arriving at Pine Bluff, Ark., on the same date. He positively denied that he was in Clarksdale on February 28, 1924, which was the date on which the $10,000 bond was executed, and testified that he had left his client there the previous evening; that Mills, the Pine Bluff representative of plaintiff, had advised him that the bond as actually given was not an open bond, but an indemnity bond, carrying a premium of $100, and had asked him to sign an application for such a bond, but that he had refused so to do; that he protested against the bond, and was not going to sign anything that would make him liable. With reference to the agreement to pay premium, which was later signed by him, he testified as follows: "Mills requested that I sign my client's name so as to complete his record. I signed the new premium agreement as attorney for Fischer Freres, with the distinct understanding that I was doing so as agent for my client and that I was not liable either on the bond or the indemnity

or for the $100 premium. Later Fischer ratified my action and paid the premium."

On this point, he further testified: "Immediately after my return from Clarksdale, Mills received a letter from Harwell about the new premium agreement. I signed the agreement on the express condition that I was not liable either for the premium or on the bond, after the third time that I was requested by Mills to sign. Mills agreed that I would not be held personally responsible."

He also testified that when the application was made by him on February 25, neither Mills nor he knew that a $10,000 bond would be required. The application was signed by Fischer. The premium was $10, which was based on an ordinary cost bond, on the theory that experience showed that such liability never exceeded $1,000. As to the $10,000 cost bond, he testified that he did not prepare it, but that his attention was called to it, and that he objected to it strenuously; that when in Clarksdale he advised the agent of plaintiff that if the $10,000 bond was executed, he would not be liable for it; that Mitchell, plaintiff's representative at Clarksdale, had not told him that he would execute the bond on the faith of his indemnifying agreement.

Mr. Mills, plaintiff's representative at Pine Bluff, Ark., as a witness for the defendant, testified that he had reported to Wilson that he had just received word that a $10,000 bond would be demanded, and that he (Mills) had authorized the agent at Clarksdale to execute an open penalty bond; that Wilson in this conversation told him that he did not agree to the $10,000 bond. Referring to the premium agreement, Mills testified that Wilson had refused to sign it when he first called on him, but said that Fischer would return in a few days; that he (Mills) held it in suspense for a few days and then suggested to Wilson "that Mitchell's office and mine would get in bad with the company because a $10,000 bond had been executed, and the Memphis office had to report it. He then signed the premium agreement under protest. He said he would sign it as attorney for Fischer-Freres, pending the confirmation by W. Fischer. He explained that he did not assume the right to sign it until it had been referred to Fischer, and I knew that when I accepted it. When Fischer came back he ratified it. Wilson said all along that he would not obligate himself personally by it. For the company I agreed to the condition under which he signed it, and his testimony is true."

This witness also testified as follows: "The morning before Wilson left for Clarksdale, he said he had just received a message that a $10,000 bond would be required, and said he would never submit to it. I told him the premium would be $100 and he said he would not consent to it."

When the plaintiff company executed a $10,000 bond, it possibly constituted a new proposition which the defendant might have accepted, but the evidence produced by him, and which the jury believed, warranted the conclusion that he did not accept the new proposition, and, hence, never became liable to indemnify the plaintiff on the $10,000 bond. We are of the view that there was substantial evidence sufficient to warrant the jury in finding for defendant.

It remains to consider the assignments which challenge the instructions. No exceptions were saved to the instructions as given, but two instructions were requested and refused. So far as they correctly covered the issues, they were covered by the instructions as given. In fact, we are of the view that the instructions as given were very favorable to the contentions of the plaintiff. They even went so far as to permit a recovery on either one of three theories, either an express contract, an oral contract, or estoppel. On the prior appeal this court held that plaintiff might invoke the doctrine of estoppel which might arise from the evidence, admissible under the Arkansas practice, to meet the affirmative defense embodied in the defendant's answer and not constituting a counterclaim. But that estoppel should go to sustain the cause of action pleaded. That is, it might estop the defendant from denying that he had contracted in writing to indemnify the plaintiff, but here, while the action was based upon a written contract, the court instructed the jury that they should find for the plaintiff if defendant had orally agreed to indemnify the plaintiff. We doubt whether plaintiff was entitled to such an instruction. Under it, a part of the jury might have found for plaintiff on the allegation of a written contract, while part of the jury might have found for it on an oral contract, but on neither issue would all the jury have agreed.

The substance of plaintiff's contention as to the refusal of the instructions requested, is that it was thereby deprived of having submitted to the jury a still further theory, to wit, that of an implied contract. This was, of course, wholly inconsistent with the ex-

istence of an express contract which plaintiff alleged.

We are of the opinion that the court committed no errors to the prejudice of the plaintiff, and the judgment should, therefore, be affirmed.