**Barbara MOORE, Appellant,**

**v.**

**The MANHATTAN COMPANY, t/a Hinkel Rug Cleaning, Appellee.**

**No. 5487.**

District of Columbia Court of Appeals.

Argued Jan. 26, 1971.

Decided May 5, 1971.

Lawrence C. Moore, Washington, D. C., for appellant.

R. Harrison Pledger, Jr., Washington, D. C., for appellee.

Before HOOD, Chief Judge, and PAIR and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from a judgment against the appellant in a suit brought by appellant for the value of two oriental rugs that she had stored in 1953 with the E. P. Hinkel & Company, Inc.[1]

The evidence at trial, without a jury, revealed that the appellant and her late husband had stored four oriental rugs with the Hinkel Company in 1953 and thereafter paid the storage charges as bills were received. In February of 1959, unknown to appellant, the Manhattan Company trading

1. The E. P. Hinkel & Co., Inc., was doing business at 600 Rhode Island Avenue, N.E., Washington, D.C., which is the same address from which appellee operated under a similar name from 1959 to the time of trial.

as Hinkel Rug Cleaning took over the business at that address under a so-called "lease" agreement. Unfortunately, the provisions of that arrangement are not before this court as neither party offered to introduce the agreement in evidence. The charges for storage rendered to appellant from 1953 through 1961 were on billheads of the "E. P. Hinkel & Company, Inc." [2] From 1963 to 1969, however, the bills bore the heading of "Hinkel Rug Cleaning."

In 1963 appellant requested, and was shipped, one of her rugs. Thereafter the appellant continued to receive, and pay, bills from Hinkel Rug Cleaning for the storage of three oriental rugs. In January 1969 appellant requested that her remaining three rugs be shipped to her daughter in New York City. After a delay of four months, the appellee sent to appellant's daughter three rugs, including one of appellant's rugs which had remained in storage. The other two rugs shipped to appellant's daughter were described in testimony by Mr. Zanelotti, the plant manager for both companies, as "replacements for the two that were missing." Appellant informed the appellee that the replacement rugs were not acceptable and requested that appellee pick them up at its expense, which it failed to do.[3]

In response to a question by the court, "Did you get the record of Hinkel Company when your company took it over?" Mr. Zanelotti said: "Well, we received a record showing that we had—supposed to have had four rugs, and we only had two."

The appellant testified that at the time she stored the rugs with the Hinkel Company she was given a receipt or ticket bearing identifying numbers F–1530 and S.O. 1093. It is noted that the storage bill from "Hinkel Rug Cleaning" (Manhattan) dated April 11, 1963, carried at the top right-hand corner the same identifying numbers: "Ticket No. S.O. 1093" and under that "F–1530."

The invoices appellant received from E. P. Hinkel & Co., Inc., identified the rugs stored as "4 ORI." and listed the square footage of each. This same identification of the four rugs also appeared on the invoices for storage charges of January 1, 1960 and July 1, 1961 after appellee had taken over the business under the lease agreement. A payment receipt from appellee dated April 28, 1963, after appellant had requested and received delivery of one of her rugs, listed storage charges for three oriental rugs and bore the following: "Ori. 80 sq. ft. piece #2 delivered April 10–63." The receipt also carried the same identifying numbers as the original receipt given appellant in 1953 and indicated, "Date received May 4–53."

Mr. Zanelotti further testified that plaintiff's exhibit 13(b), which was a check from appellant's late husband payable to "Hinkel", carried the endorsement "For deposit only Manhattan Laundry & Drycleaning Company." This check dated April 27, 1963, was in payment of a bill for storage charges rendered by "Hinkel Rug Cleaning."

There seems to be no doubt that appellee represented to appellant that it had four of her rugs in storage until April 10, 1963 when rug #2 was delivered to appellant, and that thereafter it had three of appellant's rugs in storage. Although appellee claimed at trial it received only two rugs from E. P. Hinkel & Co., Inc., the above records indicate it had received four rugs and it never advised appellant to the contrary.

The holding below for the defendant was based on the court's view that the plaintiff would have to show that the Manhattan Company took possession of the identical rugs that the plaintiff had left with the Hinkel Company or, in the alternative, that the Manhattan Company assumed all of the obligations of the Hinkel Company, and that appellant had failed in such proof.

---

2. Even though appellee took over the business in 1959.

3. Appellant testified she is still holding these rugs for appellee.

Although a good argument could be made that appellant's exhibits satisfy that requirement of proof, we do not find it necessary to resolve that question since, in our view, the law applicable to this situation does not place so difficult a burden on the appellant.

We begin by noting that the appellant was never advised of appellee's role, from the time the lease agreement was entered into by appellee with the E. P. Hinkel & Co., Inc., until some time after appellant made a demand for the return of her last two rugs. In view of appellant's continued reliance upon the actions and representations of appellee, the question necessarily arises as to whether or not the appellee, who was in possession of all the pertinent facts, is now estopped to deny liability.

It has been said frequently that equitable estoppel, or estoppel *in pais* must be affirmatively pleaded if the party has an opportunity to do so,[4] and Rule 8(c) of the Federal Rules of Civil Procedure specifically provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel * * * and any other matter constituting an * * * affirmative defense." In this case, however, it is not a matter of defense and the evidence that raises the question of estoppel was all properly admissible under the issues as posed by the pleadings. In light of the evidence before the court we cannot be blind to the question of whether or not an equitable estoppel should be raised. United States Fidelity & Guaranty Co. v. Wilson, 41 F.2d 319, 324 (8th Cir. 1930); Letta v. Cincinnati Iron and Steel Co., 285 F. 707 (6th Cir. 1922). *See also* Annot., 120 A.L.R. 8, 30–33. We note too that appellee has not objected to the issue of estoppel being raised.

It is recognized in this jurisdiction that "[t]he essential elements of equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false rep-

resentation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." Parker v. Sager, 85 U.S. App.D.C. 4, 8, 174 F.2d 657, 661 (1959), *quoting* 19 Am.Jur. Estoppel § 42.

The evidence in the case at bar, as outlined above, satisfies the elements of an equitable estoppel. Consequently we hold that the appellee is estopped to deny liability and that judgment should be entered for the appellant. The case is reversed and remanded for further hearing on the question of damages.

Reversed and remanded with instructions.