CONLEY *v.* JOHNSON.

Opinion delivered July 13, 1901.

STATUTE OF FRAUDS—ORAL AGREEMENT—ESTOPPEL.—An oral agreement altering a written lease for a term of years, though unenforceable as a contract, under the statute of frauds, will operate as an estoppel, as against the lessor and his grantee, where the lessor by his conduct led the lessee to act upon such oral agreement, and the grantee took with notice thereof.

Appeal from Boone Circuit Court in Chancery.

E. G. MITCHELL, Judge.

Action by T. W. Johnson and others against W. P. Conley and others. Judgment for plaintiffs, and defendants have appealed. The facts are stated by the court as follows:

This suit was to cancel the lease of a certain tract of land. The lease was to continue twenty-five years. The purpose, as set forth in the written contract of lease, was to have lessee prospect and search for mineral and fossil substances, and to conduct mining and quarrying operations to any extent he might deem advisable, but he was not to hold possession of any part of the land for any other purpose. The lessee, his heirs or assigns, were to pay the lessor, his heirs or assigns, a royalty or rent of one-tenth part of all the ore to be extracted from the premises during the term of the lease. The lessee was to begin prospecting or mining within six months from the date of the lease, and was to continue work

S C—33

thereon during the term of the lease. It was agreed "that, if no mineral or fossil substances be mined or quarried within the period of five years from the date" of the lease, then the same was to be null and void. It was alleged in the complaint that the conditions of said lease had been broken because there were no mineral or fossil substances mined or quarried upon the land within five years from the date of the lease, which was executed on the 6th day of November, 1883.

The answer denied the alleged breach, and set up that the lessor and lessee entered into the following agreement as part of said original lease, to-wit: "State of Arkansas, county of Boone. This additional article of agreement, made and entered into on this 4th day of October, 1884, by and between John H. Patton, of the first part, and O. E. Hines, of the second part, witnesseth, that it is hereby agreed and understood that when the said party of the second part shall have struck and found mineral in paying quantities in three several places on said demised premises, and if such time is before there are adequate means of transportation for shipping the same to advantage, then and in that case it shall not be incumbent on the said party of the second part to further prosecute his mining and explorations of said premises for mineral until the proper transportation can be had for shipping the same to advantage, but, so soon thereafter as transportation can be had as will justify the shipping of ores or metals in quantity, then the active and continuous work as specified in the original agreement to which this is annexed shall again be commenced and prosecuted." And the answer further set up that within the time mentioned in the lease the lessor examined the work done on the land by the lessee, and agreed with him that the prospecting and mining done on the premises by said lessee showed mineral in paying quantities, and was a compliance with the terms of the lease, and that no further work under the lease and additional agreement would be required of the lessee, and that what he had done would be, and was, accepted as satisfactory under the lease; and the answer averred that appellees (the plaintiffs) had no greater rights than the lessor, to whose rights they succeeded, and were bound by the agreement between him and the lessee, and were estopped to assert anything to the contrary.

*J. W. Story,* for appellants.

The original lease and the subsequent agreement are one contract, and should be interpreted together. 16 Ark. 240; Bish.

Cont. §§ 643, 554, 59; 65 Pa. St. 483; 52 Wis. 205; 58 Ala. 296; 9 Ark. 489; 12 Ark. 489; 15 Ark. 444. The lessor agreed to and adopted the acts of the lessee as a compliance with the terms of the lease, and he is estopped to deny it now. Bish. Cont. 663; 21 Cent. L. J. 27; 12 Ark. 149; 15 Ark. 444; 9 Ark. 489; Big. Estop. 538, 539.

*G. J. Crump,* for appellees.

The subsequent agreement was a *nudum pactum,* and not binding. 8 Cent. L. J. 352; 72 N. Y. 141.

WOOD, J., (after stating the facts). We need not consider the question as to whether the additional written agreement, executed nearly a year subsequent to the lease, was based upon a consideration, and therefore to be considered and construed in connection with the lease. If it be conceded that the latter agreement controlled the clause of the lease requiring mineral or fossil substances to be mined or quarried within the period of five years from the date of the lease, still, under the terms of the latter agreement, there was to be suspension of work (or the requirements of the five-year clause), only, to use the language of the agreement, "when the party of the second part shall have struck and found mineral in paying quantities in three several places on said demised premises." It was purely a question of fact as to whether the mineral had been found in compliance with the terms of this latter agreement. We will not encumber the record by setting out and discussing in detail the evidence. In our opinion the preponderance of the evidence shows that the lessee had not "struck and found mineral in paying quantities in three several places on the demised premises." But it is contended that this provision of the latter agreement, as well as the five-year clause of the lease, was waived by the lessor in a subsequent verbal agreement by which he accepted what had already been done as a compliance with the terms of both instruments.

While it is true that a lease or written contract concerning the leasing of lands for more than one year cannot be altered or destroyed by any subsequent verbal agreement under the statute of frauds (Sand. & H. Dig., § 3469), yet "it is a settled doctrine of equity"—as was said by Judge Cockrill in *Bazemore* v. *Mullins,* 52 Ark. 207—"never to lend its aid to one who invokes it for the purpose of perpetrating a fraud." The uncontroverted proof of Patton, the lessor, under whom appellees claim, is as

follows: "I recollect he (Hines, the lessee) commenced immediately after the lease was made, and worked continuously on that fall, next spring, and until the next fall and winter, when we made this agreement,—worked right on until we had an agreement by which he was permitted to quit work until a railroad was built so as to furnish transportation. I accepted the work which Mr. Hines had done as a compliance with the terms and the additional article of agreement filed herein, and relieved him from further work until there should be such transportation as was provided for in such lease and additional agreement. I was satisfied from what I saw, and from what Mr. Hines told me, that mineral in paying quantities had been discovered. At the time I sold the land to Mr. Dennis I told him that I had given Mr. Hines what he called 'a lay off' until the transportation comes near enough to ship the mineral off. He said that was all right—that he and the old man would fix that all right. I mean by the 'old man,' Hines, and by 'lay off,' that he was not to do any more work until the transportation comes near enough to ship the ore out."

This proof furnishes the basis for the doctrine of estoppel *in pais* against the lessor and all claiming under him with notice of these facts. This court, in *Shields* v. *Smith,* 37 *Ark.* 47, quoted approvingly from *Union Mutual Ins. Co.* v. *Mowry,* 96 U. S. 544, as follows: "The doctrine of estoppel is applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party, who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statement, or enforce his rights against his declared intention of abandonment." Bigelow, Est. 557.

Mr. Bishop says: "Though the statute of frauds binds the equity the same as the law tribunals, it does not abrogate the prior equity jurisdiction over fraud." And, continuing, he says: "It is a palpable fraud for one man to entice another with promises to change his course of action and to his injury part with his effects or his services, then fall back on the statutes to avoid doing what he had led the other to expect." Bishop, Contr. (Enlarged Ed.) § 1237. Under this proof, to permit appellees to cancel the lease on the ground alleged in the complaint would be to enable them to take advantage of conditions which were brought

about by the conduct of the lessor, and which neither he nor they could avail themselves of without perpetrating a fraud upon the rights of the appellants. The decree of the learned chancellor is therefore reversed, and the cause is remanded, with directions to dismiss the complaint for want of equity.