ARK. STATE HOSPITAL *v.* KESTLE.

5-2822                                    364 S. W. 2d 804

Opinion delivered January 28, 1963.

[Rehearing denied March 11, 1963.]

*Pope, Pratt & Shamburger,* By: *M. Jack Sims,* for appellant.

*Virgil R. Moncrief* and *John W. Moncrief,* for appellee.

ED. F. MCFADDIN, Associate Justice. Appellant, Arkansas State Hospital for Nervous Diseases, filed this action against appellee, J. E. Kestle, to recover $1,710.00 for room, board, lodging, and treatment furnished Mrs. J. E. Kestle (wife of appellee) between the dates of March 1, 1959, and October 1, 1960. The Trial Court rendered judgment for Appellee Kestle and this appeal ensued, in which appellant urges three points:

"I. A husband is liable for the cost of maintaining his wife in the State Hospital under the provisions of Arkansas Statutes (1947), Section 59-230; and under the common law he is liable for the furnishing of necessaries to his wife.

"II. A husband is not liable for the 'observation' period for his wife's maintenance in the State Hospital under the provisions of Arkansas Statutes (1947), Section 43-1301, but his liability for a later commitment for medical treatment is not thereby altered.

"III. Court erred in construing Anna Kestle's commitment as detention of a criminal or convict rather than the maintenance, care and medical treatment of a mentally ill person."

We find it unnecessary to consider appellant's second and third points, because our determination of the first point is fatal to appellant's case. In the Trial Court a jury was waived and the cause was submitted to the Court upon stipulated facts, as contained in the Circuit Court judgment; and here are *all* of such stipulated facts:

"That at the time the said Anna Kestle was committed to the State Hospital for Nervous Diseases by Order of this Court, she was under charge of the crime of murder in the first degree; that it was to the best interests of the State of Arkansas and to the best interest of the said Anna Kestle that she be committed to the State Hospital for Nervous Diseases for treatment.

"That Anna Kestle was a patient in the State Hospital during the dates as pleaded in the complaint of the plaintiff, and received maintenance, medical care, and treatment while therein; that the said Anna Kestle is the lawful wife of the defendant, J. E. Kestle; that charges in the amount of. One Thousand Seven Hundred Ten Dollars ($1,710.00) were assessed for the maintenance, medical care, and treatment of the said Anna Kestle by the plaintiff, the Arkansas State Hospital for Nervous Diseases; that the deefndant, J. E. Kestle, had no connection with the hospitalization of his wife, Anna Kestle, but that the said Anna Kestle was committed by Order of the Court of Arkansas County on October 4, 1958, under the provisions of Act III of 1936, as amended (Arkansas Statutes (1947) Section 43-1301). That on November 1, 1958, this Court further ordered that the said Anna Kestle be committed to the State Hospital for Nervous

Diseases for treatment; that this was subsequent to and by virtue of the official report of the physicians at the State Hospital for Nervous Diseases declaring the wife of the defendant to be mentally ill at the time of her examination to the degree of legal irresponsibility.''

We emphasize that the foregoing are *all* of the facts shown in the record before us; and we rest our affirmance on the conclusion that these stipulated facts are not sufficient to support a reversal of the Circuit Court judgment. Mrs. Kestle was charged with murder and committed to the State Hospital for observation on October 4, 1958, under the provisions of § 43-1301 Ark. Stats. On November 1, 1958, the State Hospital authorities reported to the Circuit Court that Mrs. Kestle was mentally ill; and the Circuit Court ordered that Mrs. Kestle be retained in the State Hospital for treatment. This order of the Circuit Court was apparently[1] under the authority of Act No. 413 of 1957 and also Act No. 241 of 1943.[2] Under the said order of the Circuit Court, Mrs. Kestle remained in the State Hospital for treatment until October 1, 1960;[3] and the State Hospital filed this action against Mr. Kestle on September 24, 1960, alleging that Mr. Kestle, as the lawful husband of Mrs. Kestle, was liable to the appellant, and that the $1,710.00 covered items of necessary services and maintenance rendered to Mr. Kestle's wife. Under the first point in appellant's brief, recovery against Mr. Kestle is based on § 59-230 Ark. Stats. and also on the claimed common law duty of a husband to furnish maintenance and necessaries for his wife. We consider these points separately.

---

[1] Act No. 235 of 1959 and Act No. 77 of 1961 were subsequent to Mrs. Kestle's commitment in this case.

[2] The 1957 Act Stated: "The Superintendent may also request a writ of commitment for any patient for whom he deems it to the best interest of the patient that such a writ be issued, for the purpose of retaining the patient in the hospital for such time as the superintendent deems necessary for proper care and treatment."

The 1943 Act stated: "PATIENTS HELD UNTIL RESTORED. Any person admitted to the State Hospital under the provisions of Sections 9 and 10 of this Act, shall be there and then kept until restored to reason, which fact shall be ascertained as in case of other patients in the State Hospital."

[3] In fact, the record in this case does not disclose when or how she was released, if at all.

I. *The Duty Under The Statute.* The germane portion of § 59-230 Ark. Stats. reads:

"Pay for maintenance of patients — If any patient admitted to the State Hospital be found, upon examination, to possess an estate, over and above all indebtedness, more than sufficient for the support of his or her dependents, his or her natural or legally appointed guardian shall pay out of such estate into the office of the business manager of the State Hospital, in advance, an amount equal to one (1) month's maintenance, at a rate to be fixed by the Board of Control (State Hospital Board) from time to time on the basis of maintenance costs, and in addition, shall supply the patient with sufficient and suitable clothing, and shall remove said patient when so required and notified by the Superintendent. If the patient remains in the State Hospital more than one (1) month, such payments shall be made, monthly in advance, for the whole period during which the patient remains in the State Hospital. If the patient has no such estate of his own, then his obligation shall exist against any person who is legally bound to support such patient. Inability to pay shall not, however, cause any person to be refused admission to or discharged from the State Hospital."

Thus, the statute places the primary duty of support on the "natural or legally appointed guardian." Further along, the statute says, "If the patient has no such estate of his own, then his obligation shall exist against any person who is legally bound to support such patient." Under the wording of this statute, the primary obligation is on the estate of the patient; and it is only after there has been a showing that the patient has no estate that the claim can be made against "any person legally bound to support such patient."

In other words, the fact, that the statute first allowed recovery against the guardian and then later provided for recovery against others "if the patient has no estate," convinces us that the burden was on the appellant in the case at bar to establish that Mrs. Kestle had no estate; and the establishment of that fact was a con-

dition precedent to recovery against Mr. Kestle. If the Legislature had intended the husband to be liable under the statute, irrespective of the estate of his wife (the patient), then the statute would have imposed liability on the guardian of the patient "or any other person legally liable for the maintenance of the patient."

Since the stipulated facts do not mention the presence or absence of any estate of Mrs. Kestle, and do not mention any prior effort to recover from her guardian, we are compelled to the conclusion that the appellant has failed in its burden of proof in seeking to recover from Mr. Kestle under the statute. What defenses the guardian might offer to an action is a matter not now before us, so we need not speculate on appellant's second and third points.

II. *The Common Law Liability Of The Husband To Support The Wife.* The appellant argues that Mr. Kestle is liable for the amount claimed, regardless of § 59-230, because he is the husband of Mrs. Kestle; that the husband is liable at common law for necessaries furnished the wife; and that the amount claimed by the State Hospital is for the maintenance of Mrs. Kestle and is a necessary: But, even if the statute (§ 59-230) does not supersede the common law in a factual situation such as the one here (a point on which we now express no opinion), nevertheless the stipulated facts in this case are not sufficient to establish an absolute liability on Mr. Kestle for the support of his incarcerated wife.

All of the authorities, in discussing the relative obligations of marriage, are practically agreed that the husband is liable for necessaries furnished his wife only under certain conditions.[4]

---

[4] Typical of the general statements is this one from 26 Am. Jur. 954, "Husband and wife" § 355:

"Apart from the contractual liability of a husband for goods and services which are within the classification of necessaries, under certain conditions he is rendered liable by law when such goods and services are furnished his wife. A husband is liable for necessaries furnished his wife where they are furnished her when he is derelict in his duty to support her, whether his dereliction lies in his refusal or in his neglect; and although he has a primary right, so long as he acts reasonably, to determine what are necessaries for her and to dictate the source from which they shall be procured and the manner in which they shall

10

In 26 Am. Jur. 970, "Husband and Wife" § 372, in discussing the burden of proof, the text reads:

"One who furnishes a wife with necessaries takes the risk of establishing a case against the husband, and the burden is on him to prove the existence of the elements of the husband's liability for the goods or services furnished. Thus, he has the burden to prove that the husband failed or neglected to support his wife, and that the articles furnished her were necessaries . . . The view has been taken that a person seeking to hold a husband liable for necessaries furnished his wife while they were living apart has the burden of showing that the separation has taken place under such circumstances as will render the husband liable; the fact that the person furnishing the wife with the necessaries had no knowledge of the separation does not relieve him from such burden of proof."

In 26 Am. Jur. 995, "Husband and wife" § 399, there is a discussion of the liability of the husband for the maintenance of his wife while she is insane; and the holdings are summarized in this language:

"A husband who has neglected to provide support and care for his insane wife is liable for the expense of support and care furnished her by an individual or private asylum. However, there is a difference of opinion as to a husband's duty to support and care for his wife and as to his liability for necessaries furnished her, where she is in a public institution because of insanity. One view is that there is such a duty and liability according to the husband's financial ability. Statutes

---

be purchased, he may be held liable for an article or service furnished her which is one of that class of items of goods or services with which he normally is required to provide her, as well as for an article or service, such as medical services, with which he is bound to provide her under particular circumstances, irrespective of the fact that he supports her generally, unless the article or service is furnished on her credit alone. Sometimes the rule is merely stated that he is liable for necessaries furnished her, but such a statement of the rule leaves open the question of when and under what circumstances goods or services furnished her are necessaries, and fails to indicate the effect of an extension of credit exclusively to the wife . . . The burden of proof of the facts requisite to establish the liability of a husband for necessaries rests upon the party who asserts such liability. Whether or not the husband has made a suitable provision for the wife in reference to her support is a question for the jury, under all the facts and circumstances."

consistent with this view have been enacted in some jurisdictions. A contrary view is that the husband is under no such duty or liability while she is confined in a public institution for the insane, the theory being that the husband is not derelict in his duty to support her, since her presence at the institution and absence from home are not due to his refusal to support her at home or with his consent."[5]

We do not have to decide in this case on which side of the conflicting authorities Arkansas will stand because we revert to the stipulated facts in the record before us. These facts do not recite that Mr. Kestle had any connection with the hospitalization of his wife. There is no stipulation that Mr. Kestle had failed to maintain a home for Mrs. Kestle or had been unwilling to provide her with treatment in a private institution. It seems unreasonable to say that the State can take a man's wife away from him, incarcerate her in a hospital on an unproven charge, refuse to allow the husband to have his wife in a private institution for treatment, and still charge the husband for her maintenance. We do not know any of the facts in the case at bar, other than those that have been stipulated. We limit our present holding to those stipulated facts heretofore detailed; and, under them, we are unwilling to say that the appellant has made a case against Mr. Kestle sufficiently strong to reverse the Trial Court and render judgment for the appellant.

It therefore follows that the judgment is affirmed.

[5] We have carefully studied the cases cited to sustain the text, and have also studied the cited annotations. In addition, we call attention to the following: *Thompson* v. *State Hospital*, 208 Ark. 970, 188 S.W. 2d 503; annotation in 48 A.L.R. 733, entitled, "Constitutionality of statute imposing liability upon estate or relatives of insane person for his support in asylum"; annotation in 33 A.L.R. 2d 1257, entitled, "Liability of incompetent's estate for care and maintenance furnished by public institution or hospital before incompetent's acquisition of any estate or property"; annotation in 60 A.L.R. 2d 7, entitled, "Husband's liability to third person for necessaries furnished to wife separated from him"; *Briskman* v. *Central State Hospital* (Ky.), 264 S.W. 2d 270; *Sprain* v. *State Board* (Wisc.), 263 N.W. 648; *Guardianship of Gardner*, 220 Wisc. 490; and see also 29 Am. Jur. 180 *et seq.*, "Insane persons" § 57 *et seq.*