TREAT *v.* SAFE BUY REAL ESTATE AGENCY

5-3897                                                     402 S. W. 2d 682

Opinion delivered May 16, 1966

*Len Jones, James E. Evans,* for appellant.

*N. J. Henley,* for appellee.

PAUL WARD, Justice. This litigation concerns the collection of a fee by a real estate agency for finding a buyer ready, able and willing to purchase real estate.

The appellee herein, the Safe Buy Real Estate Agency, has its main office in Little Rock with general

agents in the town of Marshall. It will be referred to as "Agency." T. J. and Geneva Horton are the general agents and they will be referred to as such. Appellants herein are Lonnie Treat and his wife Frankie Treat.

Appellants were the owners of eighty acres of land which they had purchased from Ethel Treat. They owed $2,800 (part of the purchase price) to Ethel who held a mortgage on the land to secure payment of said sum.

On April 17, 1965 appellants signed an "Open Listing Agreement" (on the agency's printed form) employing the general agents "to procure a purchaser, ready, willing and able to buy" the lands in question for the price of $5,800 including a down payment of $2,400, balance to be paid on "good terms." The instrument contained this sentence:

"I agree to pay you forthwith as commission 10% of the selling price, when a *purchaser* is procured through you, or your representative, at the stated price and terms, or at any other price and terms acceptable to me."

On August 2, 1965 appellee filed a suit in circuit court alleging, in substance and essence, as follows: (a) That appellants signed the Open Listing Agreement mentioned above; (b) that subsequently appellants and appellee agreed upon a modification of the original listing in that the sales price was reduced to $4,000 (including a down-payment of $500), payable at the rate of $60 per month with interest at 6%; (c) that on June 21, 1965 appellee procured a purchaser who agreed to buy said land for the modified price; (d) appellants refused to execute a deed to the purchaser, and; (e) appellees were entitled to judgment against appellants for $400, being 10% of the agreed sales price. Answering the complaint, appellants admitted signing the Open Listing Agreement but specifically denied agreeing to any modification thereof, and they also denied all other material allegations.

The record contains a written "Agreement of Sale" signed by William O. Horton and his wife, dated June 21, 1965, in which they agreed to buy the land for the price of $4,000 on the terms above specified in the complaint.

The trial resulted in a jury verdict of $400 against appellants, hence this appeal.

*One.* It is first insisted the trial court erred "in excluding evidence offered" by appellants showing a sale could not be made by them. By this we presume appellants mean they could not sell the land because Ethel Treat had a $2,400 mortgage on the land, and the down payment of $500 would not be enough to satisfy her. There can be no merit in this contention for at least two reasons. One, it is not pointed out by appellants that any such testimony was excluded by the trial court. Two, the existence of the $2,400 lien on the land did not necessarily excuse appellants from liability for the brokerage fee. In the case of *Reynolds* v. *Ashabranner,* 212 Ark. 718 (p. 722), 207 S. W. 2d 304, there appears this statement:

> "The general rule is, that, unless there are provisions to the contrary, one who employs a broker is liable for the broker's compensation, regardless of the employer's interest in the property."

*Two.* It is next insisted that "there was no competent evidence to show a sale was made by anyone to William O. Horton." We do not agree. It appears sufficient to point out that Mr. and Mrs. Horton signed the written agreement which was introduced in evidence without any objection by appellant; that in the agreement they agreed to buy the land on certain terms, and; that they testified they did in fact buy on those same terms. It is not disputed that appellee induced the Hortons to sign the sales agreement.

*Three.* Here appellants contend it was error for

the court to admit "into evidence the alleged sales agreement of William O. Horton." We find no objection by appellants to such admission. Here is the record:

"Q. Subsequent to that, did you obtain this agreement of sale from William O. Horton and Melba Sue Horton?

"A. I did.

"Q. Is that the agreement of sale?

"A. It is.

THE COURT: Q. "Are there any objections to the introduction?

MR. JONES: "No objections.

THE COURT: "Let it be introduced and marked Plaintiff's Exhibit No. 1."

*Four.* Appellants' point here is: "The Trial Court erred in submitting the issue of modification as to Frankie Treat to the jury." In the first place we point out that no objection is shown in this connection. We find in the record evidence that Mr. Treat agreed to the modification and that Frankie knew of it and that she made no objection to appellee.

If appellants mean such a modification could not be shown by oral testimony, they are in error. In *Hatchett* v. *Robinson*, 237 Ark. 92 (p. 97) 371 S. W. 2d 618, we said:

"It is true that parties to a written agreement may orally modify the terms by mutual agreement or consent of the contracting parties."

To the same effect see: *Elkins* v. *Aliceville*, 170 Ark.

195, 279 S. W. 379, and *Afflick* v. *Lambert,* 187 Ark. 416, 60 S. W. 2d 176.

*Five.* Finally appellants say:

"The plaintiff's instructions number two and number three are inherently erroneous and require reversal of the cause."

We refrain from discussing the merits or demerits of these instructions because they are not set out, in whole or in substance, in appellants' brief. Moreover, an examination of the record reveals that no objection was made to said instructions.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.