ARKANSAS STATE HOSPITAL *v.* Charles Robert
GOSLEE, Guardian for Inez Rachel Boxer, Incompetent

81-80                                   623 S.W. 2d 513

Supreme Court of Arkansas
Opinion delivered November 2, 1981
[Rehearing denied December 7, 1981.]

*Hall, Tucker, Lovell, Alsobrook & Moudy,* for appel-
lant.

*Ridgeway, Bartness, Switzer, P.A.,* by: *Robert D.*

*Ridgeway, Sr.,* for appellee.

GEORGE ROSE SMITH, Justice. This is an attempt by the State Hospital to collect accumulated charges for the maintenance of one of its patients. In 1971 Inez Boxer, charged with first-degree murder, was committed by the circuit court to the State Hospital for 30 days' observation. Upon the hospital staff's finding that Mrs. Boxer was insane, the circuit court permanently committed her to the State Hospital on April 26, 1971. She is still a patient there. The murder charge was dismissed by the circuit court on April 30, 1971. In 1972 the Garland Probate Court found Mrs. Boxer to be incompetent and appointed a guardian for her estate. The appellee is the present guardian. His 1979 accounting valued his ward's estate at $125,190.45.

The State Hospital made no attempt to collect monthly charges for Mrs. Boxer's maintenance until January 10, 1980, when it filed the present claim against the guardian for $95,094.50, representing maintenance charges from April 26, 1971, through October 31, 1979. After a hearing the probate court denied the claim on two grounds: First, under the statutes the Hospital has no authority to collect maintenance charges for persons permanently committed by a circuit court upon a finding of insanity in a criminal proceeding. Second, when the Hospital filed its claim in January, 1980, the only statute that might arguably authorize the collection of such charges had been inadvertently repealed by Act 817 of 1979. This appeal is from the denial of the claim. We agree with the trial court on both counts.

On the first ground our discussion of the statutes must start with Act 433 of 1971, which as its title indicated was a comprehensive revision and codification of the laws relating to the State Hospital and to mental health. Chapter 3 of the act codified the law governing admissions to the Hospital and the collection of hospital costs. Section 1 of Chapter 3 provided that any resident of the state who became mentally ill should be admitted to the State Hospital for diagnosis, care, and treatment. Ark. Stat. Ann. § 59-401 (Repl. 1971). That section referred to patients committed by the probate courts, but it made no reference whatever to patients

committed by the circuit courts in criminal proceedings. Sections 2 and 3 provided that if a patient admitted to the Hospital was found to possess an estate more than sufficient for the support of his or her dependents (Mrs. Boxer's two grown sons are not dependent on her), the Business Office of the hospital should render monthly statements of the hospital's charges and collect them from the patient's estate. §§ 59-402 and -403. Sections 11 through 14 of Chapter 3 specified the procedure for the commitment, continued confinement, and discharge of persons charged with a crime, but there was no indication that such persons were to be charged for their maintenance. §§ 59-411 through -414. Chapter 6 of this comprehensive act contained detailed provisions for the circuit court's commitment of persons charged with a crime, but the only reference to possible liability for their maintenance was in Section 7 of Chapter 6, which required the county of the committed person's residence to pay the State Hospital's charges for not more than 90 days' maintenance. § 43-1301 (Repl. 1977). Again there was no reference to liability of the patient or his estate.

Act 433 was a comprehensive revision of the law and must therefore be read as a whole. It contained separate provisions governing civil commitments on the one hand and criminal commitments on the other. Only the civil commitments, governed by Chapter 3, contemplated private liability for the patient's maintenance. There was no similar provision in Chapter 6, governing criminal commitments, the only pertinent provision being that which required the county to bear the expense for the first 90 days. Quite possibly the legislature, had the issue been presented to it, might have required reimbursement from criminally committed patients, but the act is silent on that point. Inasmuch as a criminal commitment is often involuntary and certainly protects the public as well as the person to be confined, the legislature may have decided that the public should bear the expense.

The Hospital's argument on this first issue is not supported either by Section 4 of Chapter 3 of Act 433 (§ 59-404) or by our decision in *Ark. State Hospital v. Kestle,* 236 Ark. 5, 364 S.W. 2d 804 (1963). Section 4 dealt only with

the responsibility of persons jointly liable with the patient, which is not the situation before us. In fact, that section contained an explicit proviso that it should not be construed to require any person to pay for the hospitalization of a person committed to the State Hospital by the circuit court for a determination of sanity in a criminal proceeding, which is precisely the manner in which Mrs. Boxer's confinement originated.

In *Kestle* we merely held that the State failed to meet its burden of proving joint liability under an earlier statute, because there was no proof that the patient had any estate at all. The State Hospital, in its third point for reversal listed in the *Kestle* opinion, made essentially the same argument now presented, but we found it unnecessary to consider that issue.

The second ground for the trial court's decision is the 1979 repeal of the first 14 sections of Chapter 3 of Act 433, which included the entire authorization for the collection of the hospital's charges in cases of civil commitment. The repealing statute, Act 817 of 1979, took effect on April 10, 1979. By Acts 34 and 61 of 1980 the legislature found that the repeal had been inadvertent, re-enacted Sections 2 and 3 of Chapter 3 of Act 433, and made the re-enactment retroactive to April 10, 1979. Ark. Stat. Ann. §§ 59-1425 and -1426 (Supp. 1981). The Hospital argues that the 1980 re-enactment nullified the effect of the 1979 repeal and there is therefore a continuing right in the Hospital to collect its charges for Mrs. Boxer's maintenance ever since 1971.

We are not persuaded by this argument. It does not appear that the hospital's Business Office made any investigation of Mrs. Boxer's estate or any computation of maintenance charges until just before the present claim was presented on January 10, 1980. That was during the interim when the statutes had not been re-enacted; so there was not even a colorable statutory basis for the collection of charges from patients committed in criminal proceedings. A vested right could not arise at a time when there was no possibility of enforcing the claim under existing law. Moreover, the assertion of the vested right must ultimately rest upon the Fourteenth Amendment, with its prohibition against the

State's taking of property without due process of law. The State Hospital, however, was created by the State as a state agency. An agency or political subdivision of the State cannot invoke the protection of the Fourteenth Amendment against the State itself. *Alexander Milburn Co.* v. *Davis-Bournonville*, 270 U.S. 390 (1926); *City of Trenton* v. *New Jersey*, 262 U.S. 182 (1923); *City of New York* v. *Richardson*, 473 F. 2d 923 (2d Cir. 1973), cert. den. 412 U.S. 950 (1973). The Hospital's claim to a vested right cannot be sustained.

Affirmed.

ADKISSON, C.J., and HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. I disagree with the result reached in this case, as I believe our statutes intend that all persons committed to the State Hospital should bear a reasonable portion of the cost of such maintenance, above the needs of their own dependents, if they have the means of doing so. I can find no basis in Act 433 to support the conclusion reached by the majority that Section 2 Chapter 3 of Act 433 (Ark. Stat. Ann. § 59-402) (Repl. 1971) was intended to apply *only* to patients committed by civil proceedings and not to those committed as a result of criminal proceedings. The plain wording of the statute (§ 59-402) is to the contrary:

> . . . [I]f *any patient admitted to the State Hospital* be found . . . to possess an estate, over and above all indebtedness more than sufficient for the support of his or her dependents . . . (Emphasis supplied.)

such patient shall pay an amount of maintenance as fixed by the State Hospital Board. That language should not be construed to mean less than it says by interpreting it as applying only to civil commitments.

Any doubts as to the intent of § 59-402 to apply, as it says, to *all* patients, must be dispelled when it is recognized that this Section is not a new provision of Act 433, but is a verbatim reiteration of Section 2 of Act 241 of 1943 which, like Act 433, was a comprehensive revision of laws affecting

the State Hospital and was clearly intended to apply to persons committed under criminal proceedings. (See Section 13). This same provision (§ 59-402) can be found in almost identical form in Section 9412 of *Crawford & Moses Digest* (Act of April 13, 1893) and even in similar form as early as Act of April 19, 1873 (Section 4555, Chap. 99, *Mansfield's Digest*).

The case should be reversed and remanded with instructions to the trial court to fix an amount of maintenance charges in accordance with provisions of Act 433.

ADKISSON, C.J., and HICKMAN, J., join in this dissent.