Linda Elenia ASKEW TRUST, John D. ASKEW, Trustee
*v.* Doyle HOPKINS

CA 84-197                                              688 S.W.2d 316

Court of Appeals of Arkansas
Division II
Opinion delivered May 1, 1985
[Rehearing denied May 29, 1985.]

*James F. Dickson*, for appellant.

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, for appellee.

MELVIN MAYFIELD, Judge. White and Chapman owned certain real estate in Fort Smith which they leased in September of 1969 to Evelyn Hills Shopping Center. The lease contained an option to renew for nine consecutive five-year terms, provided written notice was furnished the lessors at least ninety days prior to the expiration of the existing lease term. In July of 1971, Evelyn Hills assigned its interest in the lease to the appellant Linda Elenia Askew Trust, and after spending more than $200,000 for improvements to the property, the Trust subleased it

back to the shopping center for rental payments of $3,493.15 per month.

In May of 1977, the Trust and Evelyn Hills assigned their interest in the prime lease to Edgar E. Bethell, Trustee, who agreed to pay the appellant the rentals due by Evelyn Hills. The assignment also contained a provision granting Bethell the right to exercise the options to renew the prime lease in the name of the Trust and Evelyn Hills. Bethell was trustee for the appellee Doyle Hopkins and in June of 1977, Bethell, Trustee, assigned all of his interest in the prime lease to Hopkins.

Hopkins subsequently expended more than $500,000 for improvements to the property but in 1979 he failed to notify the owners of the prime lease, within ninety days prior to its expiration, of his intent to renew the lease for another five-year term. When the attorney for the appellant Trust discovered this omission, approximately sixty days prior to the expiration date, he attempted to get the owners of the prime lease to forgive the time element and renew the lease, but they refused. Hopkins then successfully renegotiated directly with them and leased the property under an entirely new lease, thus, effectively bypassing the Trust.

This suit was filed by the Trust against Hopkins seeking damages resulting from the loss of its rentals and alleging the breach by Hopkins of an implied duty to give the Trust notice if Hopkins elected not to exercise the option to renew the prime lease. The trial court granted Hopkins' motion to dismiss that complaint for failure to state facts upon which relief could be had, but the Trust was allowed to file an amendment. A first amendment was filed, but also dismissed, and a second amendment was filed alleging an oral modification of the assignment from the Trust and Evelyn Hills to Bethell, Trustee. The modification alleged was that Bethell, as trustee and attorney for Hopkins, agreed he and Hopkins would either exercise the option or notify the Trust of their intention not to exercise it in ample time to allow the Trust to exercise the option.

At trial, after the presentation of the Trust's case to the jury, Hopkins moved for a directed verdict which was granted on the basis that the Trust had failed to present sufficient proof of the subsequent modification of the written contract to raise a jury question; that any claim to enforce a subsequent oral modifica-

tion, if made, would be barred by the statute of frauds; and that Bethell had no authority to bind Hopkins to an oral modification without ratification by Hopkins and that no ratification was shown. On appeal, the Trust contends that all three grounds relied on by the trial court were erroneous. We agree and reverse.

First, appellant argues that the trial court erred in granting appellee's motion for directed verdict on the ground that the appellant had failed to adduce sufficient proof of the subsequent oral modification of the written contract to raise a jury question. The attorney for the Trust, E. J. Ball of Fayetteville, testified that Bethell, an attorney in Fort Smith, called and made an appointment for Bethell and Hopkins to come to Ball's office. Ball testified that he was made aware that Bethell was acting as Hopkins' attorney and that Hopkins wanted to acquire an interest in the lease of the shopping center, to be taken in Bethell's name as trustee. He said Bethell presented him with a prepared sublease containing a paragraph about the exercise of the prime lease option. Ball said he was concerned about protecting the Trust's interest in the property from a failure to exercise the option and that before the signed documents were delivered to Bethell there were conversations between them about this paragraph in the sublease. He testified that Bethell agreed that he and Hopkins would have the obligation to either exercise the option or, if they chose not to do so, to notify the Trust of their intentions far enough in advance that the Trust would have ample time to exercise the option. Ball testified that this agreement was to be confirmed in writing by letter from Bethell to Ball. However, it was not so confirmed, and Ball said he overlooked that fact until Hopkins failed to exercise the option on time. A letter was introduced which Ball wrote to Bethell with reference to the lease and the telephone conversation in which the oral agreement about the option was reached, but it does not specifically set out the agreement. Appellant asserts that Ball's testimony alone is sufficient evidence of the existence of the oral agreement to warrant allowing the jury to decide that issue.

The test of the propriety of a directed verdict was stated by the court in *Pritchard* v. *Times Southwest Broadcasting*, 277 Ark. 458, 642 S.W.2d 877 (1982), as follows:

> In determining on appeal the correctness of the trial court's action concerning a motion for a directed verdict by

either party, the test is to take that view of the evidence that is most favorable to the party against whom the verdict is sought and to give it its highest probative value, taking into account all reasonable inferences deducible from it, and to grant the motion only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. *Dan Cowling and Associates* v. *Clinton Board of Education*, 273 Ark. 214, 618 S.W.2d 158 (1981).

It is also a well-established rule of law that a subsequent parol agreement can modify the terms and provisions of a prior written contract. *O'Bier* v. *Safe-Buy Real Estate Agency, Inc.*, 256 Ark. 574, 509 S.W.2d 292 (1974); *Treat* v. *Safe Buy Real Estate Agency*, 240 Ark. 861, 402 S.W.2d 682 (1966); *Afflick* v. *Lambert*, 187 Ark. 416, 60 S.W.2d 176 (1933). It is not uncommon for the oral modification to be asserted by one party and denied by the other. In *Afflick* the court said whether there was a modification, as testified to, was a question of fact for the jury.

Appellee cites *APCO Oil Corp.* v. *APCO Marine*, 270 Ark. 715, 606 S.W.2d 134 (Ark. App. 1980), for its holding that "before the terms of a written agreement can be altered or reformed by oral agreement the evidence thereof must be *clear, unequivocal*, and *decisive*." But, in the instant case, the appellant was not attempting to alter or reform a written agreement. Here, the appellant was attempting to prove the subsequent modification of a prior written agreement. We believe that Ball's testimony was sufficient to make a question for the jury as to the existence of an oral modification of the sublease.

The trial court, however, found that Bethell had no authority to bind Hopkins to this modification of the lease; but the appellant contends the court erred in this regard also. Clearly, there is evidence that Bethell was both attorney and trustee for Hopkins and that Hopkins clothed Bethell with the apparent authority to act on his behalf. An agent acting within the apparent scope of his authority may bind his principal. *Mack* v. *Scott*, 230 Ark. 510, 323 S.W.2d 929 (1959). The face of the sublease in this case shows that Bethell leased the property as trustee for Hopkins. The record does not contain a copy of the trust agreement, but if the trustee had authority to execute the

lease for appellee's benefit, we believe it was for the jury to decide whether the trustee had authority to make the subsequent agreement about the manner in which the option to renew the prime lease would be exercised.

Next, appellant argues that the trial court erred in granting a directed verdict on the ground that any claim to enforce the oral modification would be barred by the statute of frauds. The appellant contends that it relied to its detriment on appellee's assurances that he would renew the option, or let appellant know that he was not going to in time for appellant to renew, and that this estops the appellee from using the statute of frauds as a defense to the oral agreement.

We agree that under the law, estoppel was an issue of fact to be decided. *See Wells* v. *Everett, Director*, 5 Ark. App. 303, 635 S.W.2d 294 (1982); *Conley* v. *Johnson*, 69 Ark. 513, 64 S.W. 277 (1901). According to *Wells*, there are four elements of estoppel: (1) the party to be estopped must know the facts—here, the jury could find that Bethell was Hopkins' agent and under the law Bethell's information acquired in negotiating for the sublease was imputed to Hopkins. *Trinity Royalty Co., Inc.* v. *Riggins*, 199 Ark. 939, 136 S.W.2d 473 (1940); *Bond* v. *Stanton*, 182 Ark. 289, 31 S.W.2d 409 (1930); (2) one must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe the other party so intended—here, there is evidence that Bethell assured the Trust that the option would be exercised and the Trust had every right to believe this since Hopkins had spent more than $500,000 improving the property; (3) the party asserting the estoppel must be ignorant of the true facts—here, there is evidence that the Trust was ignorant of the fact that Bethell and Hopkins had failed to renew the lease until it was too late for it to be renewed; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury—here, there is evidence that the appellant relied on Bethell and Hopkins to renew the lease or notify it that they were not going to renew and, by this reliance, appellant lost the land lease rentals and a $200,000 building.

For the reasons set out above we reverse and remand for a new trial.

Reversed and remanded.

CRACRAFT. C.J., and COOPER, J., agree.