The Honorable James G. Dietz State Representative 7520 Highway 107 North Little Rock, AR 72216
Dear Representative Dietz:
This is in response to your request for an opinion on the subject matter of a memorandum you have enclosed. The memorandum declares the issue to be whether the aldermen of the City of North Little Rock are entitled to participate in the retirement plan of the City.
This office has previously issued an opinion on this question. Opinion No. 88-341, (copy enclosed) issued on December 14, 1988, addresses this issue and concludes that because the statute governing retirement of city employees (A.C.A. 24-12-101) does not include "aldermen" as "paid nonuniformed employees", and because there is no other state granted authority for cities to enact pension plans for aldermen, there was no such authority.
Several new developments set out in the memorandum, however, make it necessary to review the question again.
We must point out initially, however, that the resolution of your ultimate question will involve the determination of many factual issues which this office is neither empowered nor equipped to answer. We will, however, set out a discussion of some of the legal issues raised in the memorandum, in an effort to be helpful to you.
The memorandum states the facts as follows:
 The City of North Little Rock has presently had a retirement plant (sic) enacted pursuant to A.C.A. 24-12-101 elected official of the City. Several past and present Aldermen have participated in the retirement plan for numerous years. The citizens of the City of North Little Rock enacted an initiative to repeal the Ordinance which allowed the Aldermen to participate in the retirement system.
 The memorandum concludes that the aldermen are indeed entitled to participate in the retirement plan based in part upon a new Act of the legislature, Act 308 of 1989.[1] The memorandum also concludes that the initiative enacted by the people of the city was ineffective to repeal the ordinance because an "Ordinance can not be repealed by an initiative . . . an Ordinance can only be repealed by a referendum". The memorandum also concludes that even if the initiative could be considered as a referendum, the referendum was not timely because it was not filed within ninety days of the passage of the ordinance. Finally, the memorandum concludes that the retirement benefits of the aldermen may not be taken away by initiative because they had "vested" prior to the passage of the initiative, and it would be "unjust" to deny the present aldermen benefits.
From the information provided to us, it appears that there are three issues requiring discussion. The first question to be addressed is whether Act 308 of 1989 validated the inclusion of aldermen in a city retirement plan under A.C.A. 24-12-101. The second issue is whether the people of North Little Rock could by initiative petition, rather than by referendum, repeal the ordinance authorizing the inclusion of the aldermen in the retirement program. If the ordinance could be repealed by initiative rather than by referendum, the third question is whether the people of North Little Rock could exercise their initiative powers in this instance, because to do so would be to unconstitutionally disturb the "vested" rights of the aldermen already participating in the plan.
The first issue involves Act 308 of 1989, codified at A.C.A.14-42-116 (Supp. 1989), which provides as follows:
 No first-class city, second-class city, or incorporated town, regardless of the form of government, shall hereafter establish any retirement benefit system or plan for members of the governing body of the city or town except first-class cities, second-class cities, or towns which had established such system or plan prior to July 3, 1989. However, all systems and plans in existence on July 3, 1989, may continue.
 Prior to the adoption of this act, it was in my opinion clear that cities and towns had no authority to enact pension plans for aldermen, although some clearly had enacted such plans. See Opinion No. 88-341. The first question for resolution is whether Act 308 validates or "cures" the unauthorized plans which existed prior to the effective date of the act. It is my opinion that it does. Retirement plans for aldermen of cities and towns enacted prior to the adoption of this act were invalid. Act 308, however, states that such plans "may continue". Although the language of the act does not expressly state that the plans were theretofore unauthorized, and now are by virtue of the act authorized, we believe, when viewing all of the surrounding circumstances and legislative history, including the opinion issued by this office, that the intention of the legislature was to prohibit the establishment of retirement plans for aldermen in the future, but to legitimize the existing previously unauthorized plans. By enacting a provision stating that the plans "may continue" the legislature has granted them legal efficacy. Thus, even though the ordinance allowing North Little Rock aldermen to participate in the city retirement plan was invalid when adopted, Act 308, in my opinion, would have "cured" the invalidity. The ordinance's validity was not guaranteed by Act 308, however, because the people adopted an initiative to repeal it. This brings us to the second issue for discussion.
The memorandum you have enclosed does not state the dates of the events which form the basis of your question. It does not state whether Act 308 was adopted and became effective before or after the initiative was adopted and became effective. The sequence of events is important, as will be discussed later. We do know, however, that the people of North Little Rock at some point adopted and passed an initiative to repeal the ordinance allowing for the inclusion of aldermen in the city retirement plan. The memorandum states that this initiative was ineffective to repeal the ordinance because such an action could only be accomplished by referendum, not by initiative.
The Arkansas Constitution provides for the exercise of initiative and referendum powers by the people of a municipality. See generally, Arkansas Constitution, Amendment 7. Initiative petitions must be filed not less than sixty nor more than ninety days before the election at which it is to be voted on. Amendment 7, supra. For a referendum on a local ordinance, the time for filing is not less than thirty nor more than ninety days after the passage of the measure. Amendment 7, supra. Thus, a true "referendum" must be filed within ninety days of the passage of the ordinance. The memorandum you have enclosed states that the initiative was not filed within ninety days of the passage of the ordinance.
We have found no relevant Arkansas case law on the question of whether an initiative, rather than a referendum, may be used to repeal a local ordinance. Case law from other jurisdictions is likewise sparse. It should be noted, however, that the following is stated in 82 C.J.S. Statutes 120(a): "The repeal of a statute, expressly or by implication, may be accomplished by an initiative measure." Additionally, the following is also stated at 42 Am.Jur. 2d Initiative and Referendum 9:
 The permissible scope of the initiative and referendum has no limits except as stated in the provision granting the respective powers. Generally, then, by the initiative, the people may enact laws on matters on which the legislature has not acted and may amend or even repeal laws already enacted by the legislature, and by the referendum, the people may act to prevent an enactment of the legislature from becoming effective and may also reinstate an act which the legislature has expressly repealed. (Emphasis added, footnotes omitted.)
See also, Dawson v. Tobin, 74 N.D. 713, 24 N.W.2d 737 (1946).
The concept was also discussed is a dissenting opinion to Smith v. City of Freemont, 116 Ohio St. 469, 157 N.E. 318 (1927). In Smith, the dissenting justice noted that if the initiative powers were not extended to the repeal of ordinances, the legislative power reserved to the people was substantially diminished, and substantially smaller than that of their city council counterpart. If, once an ordinance has passed, and the time for a referendum has passed, the people have no right to repeal it by initiative, they are stuck with the ordinance forever, so long as the legislative body does not repeal it. The dissenting justice stated it this way:
 The majority of the court hold that initiative legislation cannot be used as a substituted (sic) for the referendum, and that legislative action cannot be repealed by the initiative, as in a referendum. In other words, the majority of the court limit the subjects upon which the electors of a city can take initiative legislative action to subjects which have not already been handled in an opposite way by council . . .
157 N.E. at 319.
The justice noted that the initiative and referendum powers were reserved under the Ohio Constitution as to "all questions which such municipalities may now or hereafter be authorized by law to control by legislative action". Our constitution has been interpreted as granting similar powers.[2] See Tindall v. Searan, 192 Ark. 173, 90 S.W.2d 476 (1936). Citing this constitutional fact, the dissenting justice went on to reason:
 That the initiated ordinance covered a question, which the municipality was authorized to `control by legislative action,' and hence comes within the protection of the constitutional provision cannot be doubted. Nor can it be doubted that the council itself could have passed the measure initiated by the people of Freemont, although it conflicted with the initial ordinance upon the same subject. It could have done this, even though the second ordinance was so inconsistent with the first as to amount to a repeal.
 It could not be seriously urged that the enactment by a city council of an ordinance contradictory to an ordinance previously enacted is invalid because of the fact that the council in its later ordinance has taken positive legislative action instead of having repealed the previous ordinance.
157 N.E. at 320.
The court then went on to note the substantial reduction of initiative power which resulted by virtue of the majority holding:
 Now it is this municipal legislative power, unlimited by statute, unlimited by the Ohio constitution except as above quoted, which this court holds cannot be exercised upon a subject upon which the council has previously acted to the contrary. Thus this holding constitutes a drastic invasion of the unlimited legislative power reserved to the people of municipalities . . . So far as municipalities are concerned, the enactment of this particular constitutional provision meant that the electors in a municipality should be at least, as high in legislative power as their servants, the council, whom they elect, and whose salaries they pay. But the present holding puts the municipal electors far below their council in legislative power.
157 N.E. at P. 321.
Like the dissenting justice in Smith v. Freemont, supra, it is my opinion that the initiative powers reserved to the people of municipalities in Amendment 7 to the Arkansas Constitution are not so limited as to preclude them from repealing an ordinance by initiative. Otherwise, any piece of local legislation which becomes undesirable after the referendum period has passed is subject only to the will of the council, and not subject to a vote of the people. Could the people not initiate a new measure which was so patently contrary to an existing ordinance that it effectively repealed it? It is my opinion that they could. We can see no reason for prohibiting the people from doing directly what they are authorized to do indirectly. Of course, it may be argued that this conclusion nullifies the ninety day requirement for filing referendum petitions. If the people can at any time file an initiative to repeal an ordinance, why is it necessary to have a separate procedure called a "referendum" and why is there a requirement that referendum petitions be filed within ninety days of the measure's passage? One reason may be the difference in nature of referendums and initiative petitions. Referendum petitions, once filed, hold the adopted measure in abeyance until the election. Amendment 7, supra. (Unless it is an emergency measure.) Initiatives, whether they act to expressly or effectively repeal existing laws, do not have this effect. The two are simply different creatures. This does not prohibit, however, the overlap of some of the powers exercised under them. See 82 Am. Jur. 2d 9, supra.
It is therefore my opinion, contrary to the opinion expressed in the memorandum you have enclosed, that an ordinance may be repealed by an initiative. We know that in North Little Rock the people passed an initiative to repeal the ordinance allowing aldermen to participate in the city retirement plan. The fact that this was accomplished by initiative rather than by referendum, in my opinion does not render it ineffective. What will render it ineffective, however, is if it disturbs "vested rights" (see, United States Const. Amendment 14), which brings us to the third issue for discussion.
The memorandum you have enclosed states that the "retirement benefits of the Aldermen vested prior to the passage of the initiative. Since the Aldermen relied upon the validity of the retirement program and paid funds into the plan, it would be unjust to deny the present Aldermen from receiving benefits." Whether the retirement benefits of the aldermen "vested" prior to the adoption of the initiative is a question of fact, which this office is neither empowered nor equipped to answer. We have not been provided any facts as to the operation of the retirement plan and what constitutes "vesting" under the plan. We simply cannot make any conclusive determinations in this regard. It is my opinion, however, that if the initiative was passed and became effective prior to the adoption of Act 308 of 1989, which legalized the retirement plan, the retirement benefits of the aldermen participating may not have "vested". This conclusion is based upon the precept that a vested right could not arise at a time when there was no possibility of enforcing the claim under existing law. Ark. State Hospital v. Goslee, 274 Ark. 168,523 S.W.2d 513 (1981). If the initiative repealed the ordinance prior to the adoption of Act 308, the plan was not one in effect on the effective date of that act. It was thus not legitimized by the act. Without the legitimization of this act, the participants of the local retirement plan would have had no right to enforce their claim under existing law.[3] They would have been participating in an unauthorized retirement plan which was, in any event, also repealed by the people. If the initiative was enacted after the adoption of Act 308, however, the aldermen participating in the retirement plan may or may not have "vested" rights in the plan. We simply cannot make this determination from the information provided us.
We regret that a conclusive answer to your question may not be given. We hope, however, that the foregoing offers general guidance in addressing the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] This act was passed after the issuance of Opinion No.88-341.
[2] A question may arise as to whether the North Little Rock City Council would have had the authority to itself repeal the ordinance including aldermen in the city retirement plan. Prior to the adoption of Act 308 of 1989, this retirement issue was not a "municipal affair", meaning local legislation on the question was unauthorized. Act 308, however, provides that local retirement plans for aldermen in existence on the effective date "may continue". Does this provision leave room for the city council itself to repeal its own ordinance? In my opinion it does. The statute does not say that such plans "shall continue". In my opinion this language would permit a local legislative body to repeal its ordinance on the issue, even though it is still not a "municipal affair", subject of course to any constitutionally protected "vested rights".
[3] This is true unless they could assert a successful "estoppel" argument. See Linda Elenia Askew Trust v. Hopkins,15 Ark. App. 19, 688 S.W.2d 316 (1985). The doctrine is based upon fairness, and although as a general rule estoppel may not be used against the government, it may be used if: (1) it will prevent serious injustice; and (2) if the public interest would not be unduly damaged by its imposition. Dempsey v. Director, Federal Emergency Management Agency, 549 F. Supp. 1334 (E.D.Ark. 1982); Foote's Dixie Dandy v. McHenry, Administrator, 270 Ark. 816,607 S.W.2d 323 (1980). Any recovery granted under this theory, however, would not necessarily include injunctive relief allowing the participants to continue membership in the plan, which is the basis of your question.